## Hay *against* Graham.

In an action on the case founded on a breach of promise of marriage, no legal inference in support of the action can arise from proof that the plaintiff was got with child by the defendant.

Quære: If in an action in case, the plaintiff declare in two counts for seduction and getting the plaintiff with child, and for a breach of promise of marriage, upon which the jury find a general verdict for the plaintiff, is it competent for the court to render a judgment upon the second count in the declaration alone?

ERROR to the District Court of *Allegheny* county.

Manate Graham against William Hay. This was an action on the case in which the plaintiff declared in two counts: first, for seducing the plaintiff and getting her with child; second, for a breach of promise of marriage: upon which the jury found a verdict for the plaintiff for $950 damages.

The court below was of opinion that ·the first count in the declaration was bad, and rendered a judgment on the second count. The other points of the case appear sufficiently in the opinion of the Court.

*Black*, for plaintiff in error.
*Judson*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J. — The declaration of the plaintiff contains two counts, the first for seducing and getting her with child, and the second for a breach of a promise of marriage alleged to have been made to her. The only plea put in by the defendant below, who is the plaintiff in error, was not guilty. On the trial of the cause, evidence was given showing that the plaintiff below had given birth to a child, and some slight evidence also tending to prove that the defendant had admitted the child to be his. This evidence, however, as was alleged on the part of the plaintiff, was not given in support of the first count, which it was said was abandoned, but given for the purpose, in connection with other circumstances, of proving a promise of marriage. And it does appear, from the charge of the court, that the jury were told the action was for a breach of promise of marriage, and that the law allowed no damages for seduction in such cases. It does not appear, however, by the record, that the count for seduction was withdrawn or abandoned; and the jury gave a general verdict for the plaintiff, assessing the damages at $950. The court directed the verdict to be entered on the second count, and rendered judg-

[Hay v. Graham.]

ment thereon. Whether it was competent for the court to do this or not, it is unnecessary to consider and determine, as the judgment must be reversed upon another ground, and the cause remanded for a second trial, when the first count, which is certainly bad, may be withdrawn, and the cause tried on the second count alone.

The court on the trial admitted evidence of the plaintiff's having borne a child, and that when the witness, alluding to this child, said to the defendant below, "Mr Hay, we buried your child respectably and decently in our own lot," he said, "that was right." And then witness asked him, "Why don't you go up and see her?" (meaning the plaintiff below); to which he replied, "It's time enough till such time as she should get better; then he would go and make all things right." Afterwards the witness told him he "ought to go and see her, and comfort her, and not have her fretting so much about the matter;" when he replied, "there is no use in her fretting." And again, the court in charging the jury and commenting on this evidence, after stating the fair interpretation of it to be an admission that he was the father of the child, and her seducer, instructed the jury that the reasonable inference from it, if they believed it true, was, taking it in connection with the other facts of attention and courtship, that there had been a promise of marriage—that a mutual promise of this kind passed between the parties. The admission of this evidence, as also the charge of the court to the jury in regard to it, were excepted to by the counsel of the defendant below, and form the ground of complaint on the part of the plaintiff in error here. If the court were correct in their instruction to the jury, then the evidence was properly admitted, otherwise not. The correctness of the instruction given by the court to the jury, then, presents the question whether the evidence tended in any degree to prove a promise of marriage made by the defendant below to the plaintiff, or to prove facts, even when taken in connection with any other facts of which evidence was given, from which such a promise could be reasonably inferred to have been made. As to "the other facts," such as the court refer to in their instruction, "of attention and courtship," it is difficult to perceive that any evidence was given, going to show that the defendant paid her more attention than some other young men; and as to courtship, if there be any evidence of that, it pointed to a different person from the defendant, with whom it was testified that she said she had a correspondence in writing; and when asked by the witness if she was engaged to be married, she replied that he would think so if he were to see the letters. The witness, who had been paying attention to her for some seven months, was prevented by this information from continuing his visits any longer. If there was any courtship offered by the defendant below to the plaintiff, it must have been of a very cold character, to say the most of it, according to the

[Hay v. Graham.]

evidence; for the brother of the plaintiff below, a witness for her, who lived with her in their father's family during the whole time, could not say that he saw the defendant visit his father's house, or his sister, the plaintiff, upon an average, more than once a month. Now, it is perfectly clear that no facts of attention and courtship, or of either, on the part of the defendant below to the plaintiff, appear to have been testified to, that could possibly be brought to the aid of the evidence objected to, in order to warrant the jury in finding a promise of marriage, or drawing an inference of the kind. And as to the evidence itself being sufficient to warrant such an inference or finding of the jury, that would be to imagine what does not happen or take place in one case out of twenty where bastard children are begotten and born. When the defendant below was asked by the brother-in-law of the plaintiff why he did not go up and see her, (not marry her), he replied, "It's time enough till such time as she should get better, then he would go and make things all right." That is, as the counsel for the plaintiff below would construe it, and as the court too seem to have considered it, that when she got better he would go and see her and *marry* her. Why such an interpretation can with any degree of fairness be put on all he said, I am at a loss to imagine; for such a thing as his marrying her, or having ever promised to do so, had not been suggested or mentioned to him by any one, and in his reply he certainly does not speak of or name it. But it is said he must have meant that he would come and marry her, as that was the only thing he could do whereby he would make, as he said, "*things all right.*" But his marrying her would not have made his begetting a bastard child with her, which was all that could be said to have been proved or admitted by him, all right either in a moral or legal point of view. Compensation, however, of some kind may have been meant; and certainly the most usual and common kind of compensation made by the man charged with having begotten the child in such cases, is to pay to the mother of the child a sum of money at least sufficient to indemnify her for all the expenses attending her lying-in, the birth and support of the child. And this being the usual and ordinary mode of making *all right,* in such case as that which the evidence in some degree tended to prove against the defendant below, it would have been more rational, as well as natural, to have inferred that that was what he meant he would do. But, at all events, it was going too far to conclude from all he did say that he would marry her. In truth, I am inclined to consider all he did say as amounting to nothing on account of its uncertainty.

Judgment reversed, and *venire facias de novo* awarded.