## Daniel Sheahan v. Mary Barry.

*Breach of promise to marry: Damages: Seduction.* Seduction, may be proved in aggravation of damages in an action for breach of promise to marry.

*Breach of promise to marry: Seduction: Incontinence : Damages.* When a man breaks off an engagement after he has seduced the woman, and does so on grounds furnishing no excuse or reason, if he on the trial produces evidence of her previous incontinence before or during the engagement, of which he had no knowledge or suspicion before he broke it off, such evidence, if believed, will go in mitigation only, and not in bar of damages.

*·Charge to the jury : Physical symptoms: Question of fact.* A court cannot charge as a question of law upon inferences to be drawn from physical symptoms. If they are intelligible without medical testimony, they are for the jury and not for the court to interpret.

27 MICH.—28.

*Breach of promise to marry: Marriage.* Marriage by one of two engaged persons to a third person is a breach of promise which puts it out of his power to perform the engagement, and is therefore of itself an immediate ground of action.

*Charge to the jury: Sympathy.* A court cannot be required to direct the jury not to be governed by their sympathies, but to disregard them, where they are sufficiently cautioned that they must be governed by proof.

*Jury: Special questions.* The jury cannot be required to find specially upon any question the answer to which would in no way affect a general verdict.

*Statute construed: Stenographer: Charging juries.* The act providing a stenographer for Wayne county (*Comp. L. 1871,* § *5034*) is valid, and controls sections one and four of the former act (*Comp. L. 1871,* §§ *5023–5026*) concerning the charging of juries. The circuit judge of Wayne county has the same power as before the earlier act was passed to charge fully and orally.

*Charge to the jury: Credibility of witness: Judge's opinion.* It is not error which will require the reversal of a judgment, that a circuit judge indicates his views as to the credibility of a witness, if he expressly directs the jury to decide for themselves without reference to his views.

*Heard April 25 and 29.    Decided May 6.*

Error to Wayne circuit.

*Minock & Baker, George H. Prentis* and *Ashley Pond,* for plaintiff in error.

*Moore & Griffin* and *J. Logan Chipman,* for defendant in error.

CAMPBELL, J.

The suit below was brought for breach of promise and seduction, and a verdict was rendered for damages.

It is now claimed that it was incompetent to allow evidence of seduction in aggravation of damages.

It was hardly questioned that the practice of allowing such testimony has been general, and the cases opposed to it are not numerous. It is claimed, however, that these cases stand on better reason, and that the proof should be excluded, *first,* because the parties are *in pari delicto;* and, *secondly,* because a separate action will lie for seduction. The authorities mainly relied on in aid of this defense are *Burks v. Shain, 2 Bibb, 341; Weaver v. Bachert, 2 Penn. St., 80;* and *Perkins v. Hersey, 1 R. I., 493.*

We do not think the objection that the parties are

equally in fault is legally tenable. The whole law concerning the action for seduction, and the criminal proceeding for the same offense would be inconsistent with this theory. The common sense of mankind has approved the rules which hold the seducer responsible. The proposition that he is rightly liable is one of those plain maxims which no amount of reasoning will vindicate more clearly than the natural sentiments of humanity; but it has always been recognized as a sound rule at common law, and the ingenious attempts of some judges to demonstrate its unsoundness have produced very little impression. Where popular opinion and legal usage have been so long in harmony, and the heavy verdicts generally given in aggravated cases show the profound conviction which men generally have of the evil deserts of such offenders, we do not feel called upon to search out any new arguments to maintain a doctrine which seems to us as reasonable as it is well settled by practice and decision.

The objection that the damages should not be allowed in an action for breach of promise rests on a different principle, but we think it is equally unfounded. The common-law practice is substantially uniform in allowing it. The seduction which is allowed to be proven in these cases is brought about in reliance upon the contract, and is itself in no very indirect way a breach of its implied conditions. Such an engagement brings the parties necessarily into very intimate and confidential relations, and the advantage taken of those relations by the seducer is as plain a breach of trust in all its essential features as any advantage gained by a trustee, or guardian, or confidential adviser, who cheats a confiding ward, or beneficiary, or client, into a losing bargain. It only differs from ordinary breaches of trust in being more heinous. A subsequent refusal to marry the person whose confidence has been thus deceived cannot fail to be aggravated in fact by the seduction. The contract is twice broken. The result of an ordinary breach of promise is the loss of the alliance and the mortification

and pain consequent on the rejection. But in case of seduction there is added to this a loss of character, and social position, and not only deeper shame and sorrow, but a darkened future. All of these spring directly and naturally from the broken obligation. The contract involves protection and respect, as well as affection, and is violated by the seduction as it is by the refusal to marry. A subsequent marriage condones the first wrong; but a refusal to marry makes the seduction a very grievous element of injury, that can not be lost sight of in any view of justice.

We think the common-law practice, which, so far as we know, has never before been questioned in this state, is based on sound principles. The recovery of damages by the injured woman was not at common law affected one way or the other by the right of her friends to sue for seduction. Although the damages they recovered for loss of service were allowed to be much larger than the value of wages could have been, they were nevertheless, in legal contemplation, the damages of the master or parent, and not of the woman. And if she was not in the employment or guardianship of any one, there could be no suit where there was no service; and unless the damages from seduction were considered in an action for breach of promise, they could not in such case be considered in any action on her behalf. No rule can be just which does not give the injured person the full damages resulting to herself from her injury; and this was done in an action for breach of promise, as it was not done for her in any other action.

But it is claimed that our statutes having provided that recovery can be had for seduction without any showing of service, the reason for the old rule has ceased. As the law now stands, the suit may be brought by the parent or guardian of the minor, or by any relative who may be selected and authorized by a woman of full age.—*Comp. L.,* § *6195.*

Assuming that these damages now belong to the woman, (a point on which no decision has yet been called for), as

they certainly should, there may be many cases where no such relative can be found, or none who will assume the litigation.    The rule of damages in one action ought not to vary with the possibilities of another, and if the damages are properly recoverable in one suit for breach of promise, they should be recoverable in all like cases.

There are two considerations in the way of holding the rule changed by our statute.    If it gives a remedy to the woman herself, it should, on common-law principles, be regarded as a cumulative remedy,—so far as the seduction under promise of marriage is concerned,—rather than as superseding the old one.    And it is better for all parties, and more consonant with public policy, that where justice can be fully accomplished in one suit, no one should be driven to begin more than one.

And where this rule is respected, there can be no danger of injustice by a second prosecution.    The maxim that no one shall be twice vexed for the same cause of action will always prevent any plaintiff from suing twice for the same damages.    If they can be recovered in this action under the pleadings, a recovery in this will necessarily be a bar to any future action.    This subject was recently considered in the case of *Leonard v. Pope, supra, p. 145.*

We think there was no error in receiving evidence of the seduction and in allowing it to be considered in aggravation of damages.    The authorities were so fully cited on both sides that we do not deem it necessary to repeat the citations.    We regard the law as settled by the common-law practice, and as not changed by statute.

The remaining errors relied on upon the argument relate to the rulings of the circuit judge in his charges and refusals to charge.

Defendant below asked the court to charge that if it should be found the plaintiff had sexual intercourse with any other person than the defendant before the alleged breach of promise, and which was unknown to the defendant, then the jury, even if they should find for the plain-

tiff, should consider that fact in mitigation of damages, and the plaintiff should recover no more than mere nominal damages.

The court charged as requested, that it should be considered in mitigation, but refused to charge the damages must be merely nominal.

Upon the argument it was claimed that in such case there could be no recovery at all. And this is perhaps a more correct claim, for there can be very few, if any, actions of this nature where any thing that would in law preclude more than nominal damages, would not be a complete justification.

But we think the ruling was correct. There was evidence introduced attempting to prove plaintiff's incontinence with another about the time of the alleged seduction, and after the promise of marriage. There was also evidence from which it was claimed the jury might infer previous incontinence. It was not claimed that the engagement had been broken off on account of a discovery or suspicion of such misconduct.

Such misconduct after an engagement may very well be regarded as a violation of the woman's promise, and may generally, at least, be an entire defense to an action for breach of promise. It is not necessary to decide in this case how far the protection should extend, according as the defendant himself may or may not be in fault. But the law is not so cruel as to deny to a woman who has gone astray the power to return to virtue. It has been held by this court that the seduction of such a woman, who has retrieved her character, is legally possible, and legally punishable.—*People v. Millspaugh, 11 Mich., 278.* It has also been held that a marriage cannot be avoided on the ground of ante-nuptial incontinence.—*Leavitt v. Leavitt, 13 Mich., 452.* If a person who has promised marriage discovers that his proposed wife has been guilty previously of unchaste conduct, which has been concealed from him, he may, unquestionably, if his own conduct has been fair, break off

the engagement and be legally justified. But where he breaks it off on some other insufficient ground, or for no reason at all, and where he has himself been guilty of seducing her under and by means of the marriage promise, we can see no reason why she should not have an action against him. No authority cited covers such a case, and we think it would not be proper to take it from the jury.

The court also refused a request that an instruction should be given to the jury that certain circumstances sworn to by plaintiff tended to show that she had previously had connection with some other person than the defendant. The ground of the refusal was that no medical evidence had been introduced calling for such a charge.

If the court had assumed to charge upon a question of physiology, not explained by medical evidence, it could only have been on the ground that the jury and every one else had equal knowledge upon the subject. It was not a question of law in any sense, and an instruction upon it as a question of fact would have been usurping the province of the jury. There is nothing to show that counsel were not allowed to argue to the jury on this evidence, and it was to the jury, and not to the court, that such arguments should be addressed.

The charges requested on the theory that the promise to marry was in consideration of illicit intercourse, are not supported by any evidence, and we need not consider them. Defendant denied the entire case, both as to engagement and intercourse. The plaintiff's story showed a previous and existing engagement.

In regard to the charge requested as to a breach of the engagement, it was proved by defendant himself that he had married another woman, and so put it out of his power to marry plaintiff. This gave her an immediate right of action.—*Short v. Stone, 8 Q. B., 358; Frost v. Knight, L. R., 7 Exch., 111.*

Defendant also asked a charge that the jury had no right to be governed by, or act upon, their sympathies, in

their deliberations in the case. The court told them, "You have no right to act upon your sympathies without any proof; but if the proof happened to concur with your sympathies, you are not to disregard the proof because of that fact; you are to be governed by the proof in the case." We can see no error in this.

A request was made that the jury be instructed to find specially on certain questions of fact. Some of these were given, and the jury answered them; others were refused, and very correctly, as not being proper questions in any sense of the term. But only one is brought before us for consideration, and that is, whether plaintiff ever had sexual intercourse with any other person than defendant, at any time prior to the marriage of defendant.

It is quite plain that no answer which the jury could have given to this question, whether affirmative or negative, could have affected the general verdict, so as to be inconsistent with it. This being so, it was immaterial, and was properly rejected. It could have been made pertinent by no other means than the addition of several important limitations and qualifications. We are, therefore, relieved from any consideration of the statute, which does not contemplate any questions not leading to legal conclusions.

A further question is presented, involving the right of the circuit judge to remark to the jury upon evidence. It is claimed that in this case the judge went beyond his authority. In connection with this an argument is made concerning the effect of certain statutes.

By section one of an act in regard to instructing juries, passed March 26th, 1869 (*Comp. L.*, § *5023*), it is provided that judges shall only charge upon the law of the case, and that the charge shall be written. By an act approved April 2d of the same year, provision was made for a stenographer for Wayne county, and it was declared that in cases where he acted, sections one and four of the former act should not apply.—*Comp. L.*, § *5034*. The title of the latter act is, "An act to provide for the appointment of a

stenographer for the circuit court for the county of Wayne, and other counties in this state, and to limit the operation of sections one and four of an act," etc.    It is objected that this law is unconstitutional in providing for more than one subject, and also that if valid, the effect is not to affect so much of section one of the former act as relates to charging upon the law.

We do not perceive any duplicity in the title.    It indicates that in the view of the legislature the employment of stenographic reporting will render it unnecessary to make all the changes in the former practice, introduced by the law of March 26th, and there is no reason that we have discovered that would authorize us to infer that in their opinion the old system would not work well enough with full reporting of all that is said on the trial.    The whole legislation relates to a single topic, and when the law declares that section one shall not apply, we have no warrant for construing it so that only a part shall not apply. If the former part of that section was (as it is claimed it was) designed to prevent judges from making as full reference to the facts as formerly, it may very well have been directly connected with the provision in regard to written charges, which would necessarily make it difficult in many cases to reduce to writing during a busy term, as long and elaborate a charge as might be given orally.    We do not express any opinion concerning the true meaning of the first part of the section, nor whether it changes the existing law or not.    There is no such repugnance, in our opinion, as to make it necessary or proper to construe the later act as applying only to a part of the section.    We are therefore to consider the objections made to the charge, as governed by the common law.

Two witnesses had been called by defendant to prove an act of unlawful intercourse by plaintiff with one of them, which had been denied by plaintiff.    One of them gave testimony tending to prove it, and the other swore to being

27 MICH.—29.

at the place, and refused to speak further under the privilege against self-crimination.

Before the judge had begun to charge the jury, defendant's counsel, among other requests, included this: "The opinion or intimation of the court as to the weight that should be given to the testimony of witnesses is not binding on the jury, but the jurors should for themselves say what weight should be given to the testimony of each witness."

The judge, after some remarks upon the peculiar character of such a request, stated that as it had been made, he would put the case in such a position that it might become applicable. He then gave some further cautions in regard to the different things to be observed in weighing the testimony of witnesses, and after comments on some of the other testimony, referred directly to that of the two witnesses just mentioned, and concerning them, spoke as follows: "Now, gentlemen, those two witnesses, as you have seen them on the stand, it is a question for you to say whether you will put any credit whatever in their testimony. If I were in your places, I should discredit their testimony entirely, but with that I have nothing to do; I am not in your places, but I am charging you upon the law of the case." He had previously charged the jury that they were to pass upon the credibility of all the witnesses.

The division of functions between court and jury is one which is essential to the safe administration of justice, and a new trial will always be granted when the judge interferes with the lawful province of the jury. He has no right to take away from them the decision of any question of fact, and he cannot deprive them of the right to settle for themselves what witnesses or what testimony they will credit or discredit. This would be clearly error.

The question in this case is whether his course on the trial was within the prohibition. And it is by no means free from difficulty. The course in the English courts

has always been less nice than in most American courts, in avoiding the discussion of facts and testimony in such a way as to indicate the opinion of the judge on questions involved. The freedom with which the circuit judge in this cause expressed his views on the two discredited witnesses is at least unusual, and he evidently understood this.

We have had our attention called to many authorities upon the general subject, but have found no case in which the course pursued here has been held so erroneous as to vitiate the proceedings. The practice in this state has grown out of the common-law practice in England, modified by various elements, chiefly introduced from New York and New England. The question we are considering has been discussed in the courts very frequently, and decided very uniformly.

The rule seems to be this: That an expression of opinion from the judge does not amount to a misdirection, even though it may be quite pointed, if the jury are fully informed and understand that they are not bound to follow it, and that they have the right and duty to decide for themselves. In *Taylor v. Ashton, 11 M. & W., 400;* and in *Darby v. Ouseley, 1 H. & N., 1,* in the exchequer, the court expressed opinions which covered most of the merits, but told the jury it was for them to decide upon the questions. In the latter case there are some remarks on the duty of a judge to prevent a jury from being confounded by sophistry and artifice. In *Solarte v. Melville, 7 B. & C., 430,* Lord Tenterden tried the cause, and the verdict was sustained on the same ground, that the case had been fairly left to the jury. This case was in the Queen's bench. In *Davidson v. Stanley, 2 M. & G., 721,* the court of common pleas applied the same rule, asserting the right of the judge to express his views. Coltman, J., said: "The learned judge seems to have made strong observations, but not stronger than he was justified in making." These are illustrations of the rule followed by all the courts at West-

SHEAHAN *v.* BARRY.

minster, and the reports show such to be the constant practice.

In *Tracy v. Swartwout, 10 Peters, 80,* the subject is discussed, and the same rule followed. And in *Games v. Stiles, 14 Pet., 322,* the same question came up, and the court used this language: "The principle is well established that a court may give their opinion on the evidence to the jury, being careful to distinguish between matters of law and matters of opinion in regard to the facts. When a matter of law is given by the court to the jury, it should be considered as conclusive; but a mere matter of opinion as to the facts will only have such influence on the jury as they may think it entitled to."

In Massachusetts, the subject was discussed and the same rule asserted in *Commonwealth v. Child, 10 Pick., 252 ;* in Vermont, in *Gale v. Spooner, 11 Verm., 152,* and *Stevens v. Talcott, Id., 25 ;* in Connecticut, in *Swift v. Stevens, 8 Conn., 431.* Other New England cases were cited on the argument.

In New York there are several cases, referred to in the argument, and fully maintaining the principle. The case of *The People v. Rathbun, 21 Wend., 509,* which was tried at the circuit by Judge Dayton, a judge who was very cautious, was one where on the trial the remarks upon the evidence went very much further than those of the judge in the cause before us.

After a careful search, nothing has been found to shake the doctrine. No such expression has been held a fatal misdirection, where the jury have been cautioned as to their own province. But where there is reason to believe they have not been so cautioned, and have not understood their right, the verdict has been as generally set aside.

There is so much danger of overstepping the line that the practice is one which is dangerous and very open to abuse. But it is very difficult for a judge to aid a jury in arriving at a fair verdict, without indicating to some

extent his impressions on facts and witnesses. Every day experience shows us that it is a very bad practice to attempt to lay down abstract legal rules. They are more apt to mislead than to guide any jury. It is only by showing how rules are to be applied in the case before them, that a jury can be wisely directed. They must be cautioned in regard to the quality of evidence, and the ear-marks of truth and falsehood; the facts must be grouped so as to be placed before them in order, and if any thing has occurred which is likely to mislead them, they must be put on their guard. It is almost impossible to perform the duties of a judge upon a jury trial without giving out many impressions, in spite of care to the contrary. Suggesting caution is a suggestion that there is something needing it. Advising scrutiny often shows and must show what witnesses need watching. Unless a court leaves some of its duties unperformed, it will often be possible for a jury to conjecture some of its views on facts as well as law. Our courts are usually very careful not to go too far, and their caution is commendable.

In the case before us, if the law had been more doubtful, it would be questionable, but it need not be decided, whether a party who practically invites an expression of opinion can complain of it. The judge gave the charge prayed for, and the request was framed in anticipation of a charge on the credit of the witnesses. As it stands on the record this request appears to have been uncalled for, but whether this were so or not, it distinctly anticipated that the circuit judge might refer to the testimony, and asked a charge on that hypothesis, which was given distinctly and clearly.

But the language complained of in this record is a much less explicit showing of the judge's opinion than would have been made by his ordering witnesses under arrest for perjury,—a course open to him upon what he may find from the facts shown in a cause tried before him,

and recognized both by common law and by statute.—*Comp. L.*, § 7657.

It can not be said the record shows his distrust of these witnesses to have been entirely unfounded.   Their story was contradicted under oath by the plaintiff, and was not, as reported in the bill of exceptions, of such a nature as to cause a conviction that the circuit judge acted without reason.   It was improbable on its face, and we are not surprised at its effect on the verdict.

We find no error on the record, and the judgment must be affirmed, with costs.

The other Justices concurred.