ALICE D. HATTIN vs. ENOCH F. CHAPMAN.

In an action for breach of contract of marriage, aggravated by seduction, the judge charged the jury that there was no rule of damages, and that they must exercise their best judgment in view of all the circumstances; that very heavy damages were often given, and should be given, where it was shown to the satisfaction of the jury that a defendant, under a promise of marriage, had succeeded in ruining a woman; and that, in such cases, if the jury were satisfied of the facts, the damages could scarcely be too heavy. Upon a motion of the defendant for a new trial it was held—

1. That the reference of the judge to the fact that heavy damages were often given by juries in such cases, being only a statement of a general and well-known fact, and not of what had been done in any particular case, was not calculated to lead the jury to confound the facts of the case on trial with those of other cases, and was not a ground for granting a new trial.

2. That the expression of opinion that such damages ought to be given, was accompanied by the condition of the jury finding that the case was aggravated by the defendant's treachery and seduction, and in this view was not open to exception.

3. That the remark that the damages could scarcely be too heavy, was made to rest upon the same contingency, and left the jury free to find the facts as the evidence might warrant, and so was not a ground for granting a new trial.

4. That it appeared from the damages given, as compared with the amount claimed, and as regarded by themselves, that the jury could not have been misled by the charge into giving excessive damages, and so that the defendant was not aggrieved by the charge.

ACTION for a breach of promise of marriage, aggravated by seduction and child-birth; brought to the Superior Court in New London County, and tried to the jury on the plea of not guilty, before *Park, C. J.* Verdict for the plaintiff for six thousand dollars. Motion for a new trial by the defendant for error in the charge of the judge. The case is sufficiently stated in the opinion.

*S. Lucas* and *T. M. Waller*, in support of the motion.

*L. F. S. Foster* and *A. F. Park*, contra.

CARPENTER, J. This is an action for damages for a breach of a contract of marriage, aggravated as it is claimed by seduction and child-birth. The case comes up on exceptions to the charge of the court to the jury.

The court stated to the jury the prominent facts as they appeared in evidence, and instructed them as follows on the subject of damages:—"The plaintiff is entitled to recover compensation for all the mental anguish she has experienced in consequence of the breach of the contract of marriage, and for all the damage done to her prospects in life naturally resulting from such breach, aggravated, if such be the fact, by seduction and child-birth, effected by the defendant by means of the contract of marriage. There is no rule of damages which you can apply to the case. You must exercise your best judgment under all the circumstances of the case. Oftentimes very heavy damages are meted out, and should be meted out, where it appears to the satisfaction of the jury that a defendant, under a promise of marriage, has succeeded in ruining a plaintiff—destroying her character and blighting all her prospects in life by seduction and child-birth. In such cases, if the jury are satisfied of the facts, damages can scarcely be too heavy."

The objection to a part of this charge is, that the jury have nothing to do with, and are not supposed to know, and ought not to know, what other juries have done in other cases. This is true, and we have no disposition to relax the rule on that subject in the least. It will be observed however that this case differs from that of. *Baldwin's Appeal from Probate,* 44 Conn., 37. In that case the facts of a reported case were read to the jury, together with the verdict, for the purpose of influencing their action. Had that been done in the present case, had the court stated to the jury the facts of other cases and the amount of damages given, it would have presented a very different question. But that was not done. The court simply referred to a fact, which was well known to every intelligent juryman, that in aggravated cases of breaches of promise to marry, oftentimes very heavy damages are given, and added that they should be given in this case if the jury should find the aggravating facts referred to. By implication the jury must have understood that very heavy damages were only to be given in case the aggravating circumstances claimed by the plaintiff were found to exist.

The import of this part of the charge then is this: Very heavy damages are oftentimes given, and may be given in extreme cases, and in extreme cases only.   So understood we see nothing in the charge that was calculated to convey any erroneous impression to the jury as to the law, or to lead them to confound the facts of this case with the facts and actions of juries in other cases, thus conducing to a wrong verdict or excessive damages.   While we think it would have been quite as well, and perhaps better, to have omitted all reference to other cases, yet we think on the whole that it is not a sufficient ground for granting a new trial.

But exception is taken to the concluding part of the charge, that in " such cases, if the jury were satisfied of the facts, damages could scarcely be too heavy."   This it must be confessed is a strong expression of opinion by the judge, contingent of course, that damages ought to be heavy; but it will be observed that it left the jury free to find the facts as the evidence might warrant.   The case as claimed by the plaintiff was a strong one—perhaps an extreme one.   If the jury did not find it so the remark of the judge had no application. If they did then it applied, but we cannot say that it was erroneous in point of law.   On the contrary we think that in such a case the jury would be justified in giving heavy damages, if in the exercise of a sound discretion the case should call for it.   The charge therefore in its strictly legal aspect was not objectionable.

Nor was it objectionable on the ground that it was calculated to mislead the jury and induce them to give excessive damages, unless it appears that it had that effect; and that does not appear.   The plaintiff demanded fifteen thousand dollars damages; the jury gave her six thousand.

If they had understood this part of the charge in the extreme sense now imputed to it, disconnected from the other parts of the charge, and had been governed by it, we should naturally expect a verdict for nearly or quite the full amount demanded—fifteen thousand dollars—especially if they found the facts substantially as claimed by the plaintiff.   Instead of that the jury gave less than one-half of that sum.   The jury

therefore must have found, either that the facts were not proved, (in which case the charge did not apply and the defendant is not aggrieved,) or, as is more probable, they found the facts proved, and understood this part of the charge, in connection with others, in which they were told that they must exercise their best judgment under all the circumstances, as not intended to take from them the duty and responsibility of judging as to damages. It is evident that the jury did judge for themselves, and we cannot say that the damages given were excessive.

On the whole we think substantial justice has been done; and if the language of the court was unusual and calculated in itself to mislead a jury, yet we think it reasonably certain, under the circumstances, that they were not in fact misled, and that the defendant is not aggrieved thereby.

A new trial is not advised.

In this opinion the other judges concurred; except PARK, C. J., who having tried the case in the court below did not sit; Judges BEARDSLEY and CULVER of the Superior Court sitting in the places of Judges PARK and GRANGER.

# APPENDIX.

## OBITUARY NOTICE OF ISRAEL M. BULLOCK.*

ISRAEL M. BULLOCK, of the Fairfield County Bar, was born at Thompson, Connecticut, the 20th of May, 1844. After a preparatory course of study in his native town, and at Suffield in this state, he entered Brown University at the age of eighteen, where, in 1865, he graduated with high honors. At the close of his first collegiate year he enlisted in a regiment of Rhode Island three months volunteers, and after serving his country in that capacity to the end of the term of his enlistment, was honorably discharged. He studied law with G. W. Phillips, Esq., of Putnam, and was admitted to the bar of Windham County, but soon after began practice at Norwalk. His talent and integrity soon gained him the confidence of the people of that town, and they sent him as their representative to the General Assembly of 1869. Removing to Bridgeport in August of that year, he entered into partnership with Amos S. Treat, Esq., with whom he continued to be associated in business until the fall of 1874, when the firm was dissolved. From that time he practiced law alone, until February, 1879, when the writer became his partner. During the last two or three years of his life his health gradually failed, and his decease occurred on the 20th of October, 1879.

Endowed with unusual mental activity and stimulated by what seemed the certain promise of great professional and political success and distinction, it was a severe trial to him to realize, day by day more and more clearly, as he was compelled to, that all his bright anticipations were to be eclipsed by an early death; but it is the testimony of those who were most intimate with him in his sickness, and nearest him in his last hours, that no murmur escaped him. He yielded with perfect resignation to the divine decree. It was "the will of God," he said.

His funeral was largely attended by the Bench, the Bar, the Masonic fraternity, and many others who had known him in social and business relations. On every hand expressions of sorrow were heard; not simply that an amiable companion had been removed from earth, but that society and his profession had been thus unseasonably deprived of so valuable a member and so bright an ornament.

There was a strong conviction in the minds of all who knew him that his future career would be singularly distinguished. Judging from what

---

* Prepared at the request of the Reporter by R. E. De Forest, Esq., of the Fairfield County Bar.

he had already attained, this belief certainly appears to have been well grounded. He came a stranger to this part of the state, a young man just admitted to the bar, with no large circle of acquaintances or family influence to introduce or aid him. He came among many older and well established lawyers. Every one who has tried the experiment knows how little there must have been in such circumstances to draw out or encourage a beginner, and how much to hinder and dishearten him. Still, within the short space of ten years we find him a representative in the legislature from one of the most populous and important towns in the state, prosecuting attorney for the city of Bridgeport, city judge of Bridgeport for three years, and corporation counsel for the same municipality. Besides this, he had acquired as early as 1876 a private practice nearly if not quite as large and lucrative as any other in Fairfield County. He was intrusted with the sole management of many very important causes, not only at his own bar, but in other parts of the state, and conducted them with so much skill and energy that he rarely met defeat. He gained and retained to a remarkable degree the confidence of his clients. While he was living those who had once employed him sought his advice in any new emergency, and when they had obtained it relied implicitly upon it. And even when the result of the litigation was less favorable than they had hoped, they were never disposed to attribute it to any failure of judgment, or relaxation of effort, or want of ability on his part. Now these results, in a life that closed at thirty-five, were not accidental. Their explanation must be found in rare qualities of mind and heart possessed by him. What they were, it is interesting and profitable to inquire. One noticeable trait, to which was doubtless due some measure of his success, was the caution and deliberation which he observed in all his professional business. It entered into even the minutest details of his practice. He was systematic and exact in the preservation and arrangement of his papers, in the keeping of accounts, in disposing of correspondence, in remembering and punctually performing every appointment and engagement. ‘ Little things, perhaps we say, and yet they form a material part of the basis of all human attainments. Though his perception was quick, and his logical powers at once comprehensive and ready, yet when consulted, even on matters of minor importance, he bestowed upon them his closest attention and profoundest thought. The opinion which perhaps was immediately suggested to him, and which in the end he would probably be confirmed in, still, he was unwilling to adopt and give, until he had examined the whole field, however familiar, and viewed it in every possible light. When his opinion was thus formed it was generally found unassailable. He had from the outset a distinct and firm theory of the cause, and when in the production of evidence, and as an advocate, he came to defend it, every step was taken with precision, for a fixed purpose, and with telling effect. In his arguments to the court or jury

his claims were presented so concisely and clearly that they could not be misunderstood, and with a force of reason and authority that could could not be easily resisted. So, at all times, himself persuaded, and with an eye single to persuasion, he was earnest, perspicuous, convincing, eloquent. Almost from the time of his admission to the bar he had been so actively engaged in the discharge of professional and official duties that he had perhaps found less opportunity than some of us enjoy for pure legal study. Probably he had not read in course a very large number of legal treatises. His reading however had been thorough and thoughtful. His memory was retentive. He had obtained a complete mastery of the essential principles of the science, and in his application of them to the facts of his cases he exhibited a skill rarely excelled by the most experienced practitioners.

It is not the province of this sketch to dwell upon Mr. Bullock's moral and social qualities, except as they bear upon his professional character. It would be superfluous to do it. His memory in this respect is tenderly preserved in the hearts of his family and personal friends. Their spontaneous utterances, by lip and pen, have already expressed, and will again repeat, all that the warmest affection can say (and it is not too much) of that depth of kindness, that firm fidelity, that devotion to duty which adorned his private life. Yet it is appropriate to put it upon the record while we are considering what he had accomplished, and the greater attainments that were promised him, that in his chosen occupation, in his natural ambition to reach the honors and emoluments connected with it, in the eager competition and numberless temptations necessarily attending it, in his relations to the court, and in his intercourse with his clients and his brethren of the bar, he ever maintained a strict integrity and a spotless honor.

Finally, I attribute no little of his success to a certain seriousness in his disposition and deportment which all his acquaintances must have observed. It was not melancholy or moodiness, but that quality which distinguished him from the trifler, the cynic, the laughing philosopher, and led him to look upon this world and its business, human labor and human affairs, even in their minutest and humblest particulars, as grave realities, not to be ridiculed or slighted, but to be deeply considered and earnestly grappled with. He attributed to these things a dignity transcending their immediate importance, inasmuch as they constitute the means of man's intellectual and spiritual development, and in their tendency and influence reach beyond time and enter into the problem of his eternal destiny. It is to men of this stamp that others turn, from the company of merry-makers, whenever in their temporal affairs they find themselves involved in difficulty or confronted by dangers. It is on the shoulders of such men that others lay their burdens when they become too heavy for themselves to bear. This characteristic, possessed by Mr. Bullock to a remarkable degree, at times per-

haps subjected him to the suspicion that he lacked sociability, and it perhaps did unfit him for the companionship of triflers, but it brought men to him in real trouble, when in the stress of their affairs they realized that they were too serious to be treated as a farce. It enthroned him then in their confidence, and assured them that from him their business would receive a treatment commensurate with its importance to them, and that in his services they would have the benefit not only of a clear head and a strong will, but also of a lively sympathy. It was this that preëminently qualified him to be a counselor and champion. More such men are needed in this skeptical and insincere age, and heartily indeed may we lament that such a one has thus, in the flower of his life, been stricken down.