Mary E. Wrynn, *vs.* Michael R. Downey.

FEBRUARY 5, 1906.

Present: Douglas, C. J., Dubois, Blodgett, and Johnson, JJ.

(1)  *Breach of Marriage Promise.  Evidence of Seduction in Aggravation of Damages.*

In an action for breach of promise of marriage, evidence of seduction is not admissible in aggravation of damages.  *Mainz* v. *Lederer*, 21 R. I. 370, overruled.

(2)  *Procedure.  Restricting Argument of Counsel.*

The court presiding at a jury trial must exercise a sound discretion in confining counsel to the discussion of the vital issues in the case; and unless this discretion is abused, a new trial will not be granted because of restrictions placed upon the argument of counsel.

Assumpsit for breach of promise of marriage.  Heard on petition of defendant for new trial, and granted.

Douglas, C. J.   This case was brought to recover damages for breach of promise of marriage, and after verdict for the plaintiff for $10,000 the defendant petitions for a new trial on the grounds that the verdict is against the law and the evidence,

that the damages are excessive, and that the presiding justice erred in admitting certain evidence against the objection of the defendant and in restricting the argument of defendant's counsel.

The evidence to the admission of which exception was taken was offered to enhance the damages by showing that the defendant had seduced the plaintiff after he had promised to marry her. What the plaintiff actually testified to was that at some time after the promise to marry there was sexual intercourse between the plaintiff and defendant. No circumstances are given, nor is it said even that the misconduct was suggested by the defendant. The evidence is as follows: "Q. Whether or not any time after the promise to marry which you have related, was there sexual intercourse between you and Mr. Downey? A. Yes. Q. When after the promise of marriage? A. I don't just remember how long after. Q. What month was it in? A. I think June. Q. State the circumstances preceding it; what was the conversation? A. I don't just remember. Q. I will ask you directly, was it done under the promise of marriage? A. Of course, I wouldn't have thought of such a thing if I didn't think he was going to marry me. Q. Did that intercourse continue, Miss Wrynn? A. Yes." This is all the evidence on the subject, except the defendant's denial of the fact and the statement of a witness that the defendant confessed the fact to him.

If the jury had scrutinized the evidence with the care which such an accusation demands they might have declined to believe that a woman who was virtuous before could yield to the persuasion of a lover and then forget the month in which her fall occurred and the circumstances which led up to it. One would suppose that so serious an event in her life would have marked itself in her recollection more sharply than an ordinary experience. But the evidence quoted above was admitted and accepted by the jury as proof of seduction, and the defendant's exception raised the question which is now before us: Whether or not in Rhode Island evidence of seduction may be admitted in aggravation of damages in an action for breach of promise of marriage.

(1)    The question came up for decision by the court in 1851, in *Perkins* v. *Hersey*, 1 R. I. 493. At that time the full bench of the Supreme Court sat in jury cases, and the charge of Chief Justice Greene is therefore the opinion of the court. In directing the jury as to the rule of damages, he says: "The fact that the plaintiff was seduced you will not consider in this connection. We have a statute which affords the plaintiff a remedy for the injury thus done her in a more appropriate form." The last statement of the charge is not clear. If it refers to the statute, Digest 1844, p. 392, § 78, punishing as a criminal any person who should "obtain carnal knowledge of a female by virtue of a feigned or pretended marriage, or by a false or feigned expressed promise of marriage," it may be said that this affords no remedy to the plaintiff. The statute, though superseded in terms, is still substantially embraced in the statute, General Laws, cap. 281, Section 5, enacted as "An act for the better protection of the persons of women and girls," etc., Public Laws of R. I. cap. 738, January, 1889, which has, however, a much broader scope than the former law. The action of tort which the father or master has for the seduction of his daughter or servant, which in the case of father and daughter would be practically available for her benefit, is not given by statute. The report of the case recites that the plaintiff had given birth to a child, and it seems most likely that the "more appropriate" statutory remedy was the process by which the putative father is compelled to take upon him the care of his child. Whatever may have been the allusion, the doctrine is plainly declared and has been followed in this State for more than fifty years. The principle on which it is founded has been re-affirmed by this court as lately as October 13, 1891, in *Conlon* v. *Cassidy*, 17 R. I. 518, where it is said: "All the counts in the declaration except that entitled 'additional count' are to be regarded as counts for seduction, the promises of marriage being introduced merely in aggravation. To these counts the demurrer is sustained. The plaintiff can not allege her own criminal misconduct as a ground of action."

The opinion in *Mainz* v. *Lederer*, 21 R. I. 370, 375, attempts to explain away the decision in *Perkins* v. *Hersey*, *supra*, and

while affirming the doctrine of *Conlon* v. *Cassidy*, that for mere seduction there can be no action, holds that "assuming seduction brought about solely through a promise of marriage," the fact of seduction may be considered in assessing damages. The court in this decision, therefore, presume to change the law which had always prevailed in this State. The defendant asked for a re-argument, which was granted just before Chief Justice Matteson resigned, and the re-argument was had, after Judge Stiness became chief justice, before all four justices of the Appellate Division. The result was an even division of the court, and the petition for a new trial was denied. So that, while the ruling of the trial court stood for that case, there was no authoritative decision of the question of law involved. The case at bar, then, brings the question before us anew.

Shall this court now give to a woman the right to recover damages from her seducer, who has likewise violated his promise to marry her? Can it hold that, while a woman can not allege seduction as a cause of action and a breach of promise of marriage in aggravation of damages, she may hereafter in this State allege a breach of promise of marriage as a cause of action and seduction in aggravation of damages?

It does not seem to us to be within the province of the judiciary to alter a rule of law which has been so long in force. It is for the court, indeed, to find and declare new applications of old principles, adapting them to the diversified circumstances of the time; but for the legislature alone, under constitutional limitations, to repeal and modify such laws, either statute or common, as it deems outworn or hurtful.

The court may foster and direct the growth and development of established rights, but may not suppress or ignore them, or create new ones. The case at bar presents no new relations or problems. Unhappily, seductions and breaches of the promise of marriage have been dealt with by the courts from time immemorial. Y. B. 45, Edw. III. fol. 23, case 30; *Stretch* v. *Parker*, I Rolle. Abr. 22; *Holcroft* v. *Dickenson*, Carter, 233; *Holt* v. *Ward Clarencieux*, 2 Stra. 937; *Harrison* v. *Cage, et ux* 1 Ld. Raymond, 386.

It is true, that in most of the United States, the courts have

ignored these limitations on judicial construction and have sustained the contention of the plaintiff as to the admissibility of such evidence. But, aside from the objection just set forth, an examination of the decisions does not convince us that the conclusions which they have reached are supported by sound reason.

It was shown by Breese, J., in his able dissenting opinion in *Fidler* v. *McKinley*, 21 Ill. 316, that all the cases up to his time, 1859, were founded upon a *dictum* of Parsons, C. J., in *Paul* v. *Frazier*, 3 Mass., 71. He mentions and criticises *Conn* v. *Wilson*, 2 Overton (Tenn.), 233 (1814); *Boynton* v. *Kellogg*, 3 Mass. 189 (1807); *Whalen* v. *Layman*, 2 Blakf. 194 (1828); *Green* v. *Spencer*, 3 Missouri, 318 (1834); and *Tubbs* v. *Van Kleek*, 12 Ill. 446 (1851), where the chief justice dissented.

The case of *Paul* v. *Frazier* was an action for seduction, and the court held that it could not be maintained, saying: "She is a partaker of the crime, and can not come into court to obtain satisfaction for a supposed injury to which she was consenting;" and then the learned judge discusses the propriety of amending the law so as to give such an action, and utters the following *dictum*: "As the law now stands, damages are recoverable for a breach of promise of marriage; and if seduction has been practiced under color of that promise, the jury will undoubtedly consider it as an aggravation of the damages."

What was said by Judge Breese in 1859 is substantially true at the present day. All the leading cases, with two or three exceptions referred to below, are based simply upon the authority of this *dictum* and the cases through which it has been transmitted.

*King* v. *Kersey*, 2 Ind., 402 (1850), relies on *Whalen* v. *Layman*; *Wells* v. *Padgett*, 8 Barb. 323 (1850), quotes *Paul* v. *Frazier*, *Green* v. *Spencer*, and another case in the same volume—*Hill* v. *Maupin*, 3 Mo. 323 (1834).

*Coil* v. *Wallace*, 24 N. J. L. 291 (1854), holds that the action of breach of promise of marriage is an exception to all rules of damages, and cites *Paul* v. *Frazier*. Potts, J., dissenting, says, on this point (p. 318): "I am not able to assent to the doctrine, that in an action for breach of promise of marriage, the plain-

tiff can legally give in evidence her seduction by the defendant in aggravation of damages. She can not have an action for seduction; she can not recover damages directly for such an injury. This is the result of principles as well fixed and established as any in the law. She is a party to the mischief, in the eye of the law, equally guilty with her seducer; and I can not see, with this well-established doctrine standing in the way, how she can be allowed to recover damages for the seduction under the form of an action for breach of promise."

*Goodall* v. *Thurman*, 38 Tenn. (1 Head) 209 (1858), follows *Conn* v. *Wilson*.

*Matthews* v. *Cribbett*, 11 Ohio State, 330 (1860), contains no argument and no citation.

*Kniffen* v. *McConnell*, 30 N. Y. 285 (1864), approves *Wells* v. *Padgett*.

*Sherman* v. *Rawson*, 102 Mass. 395 (1869), argues the point as follows (p. 399), Colt, J.: "It may be true that damages for the seduction, as a distinct ground of action, can not be added to the damages which the plaintiff is entitled to recover for a breach of the alleged promise to marry. It would be an indirect mode by which the plaintiff could recover damages for an act which can not be the foundation of an action in favor of the party seduced, because the policy of the law forbids satisfaction, to a partner in the crime, for a supposed injury to which she was consenting. But it does not follow that the fact of the seduction is not to be taken into consideration at all by the jury. The action is nominally for a breach of contract, but the measure of damages is fixed by rules not precisely like those which apply to ordinary contracts where injury to the person is not involved. They are awarded upon principles more commonly applicable in actions of tort. The plaintiff is entitled to compensation, but that term implies indemnity for all that she has suffered by the defendant's bad faith. It includes injury to her affections and wounded pride. It involves necessarily a consideration of all the circumstances of the plaintiff's actual situation at the time of the breach of the promise. If, by reason of an imprudent or criminal act in which both participated, she is brought to such a state that the suffering oc-

casioned to her feelings and affections must necessarily be increased by his abandonment, then that would be but an inadequate and poor compensation which did not take it into account. Damages, it is true, must be awarded solely for the suffering which results from the defendant's refusal to perform his promise. But under this rule, even they can not be justly estimated without regarding the increased exposure to mortification and distress to which she has been left by a seduction and promise of marriage afterwards broken. We understand this to have long been the law of this Commonwealth. The remark of Parsons, C. J., in *Paul* v. *Frazier*, 3 Mass. 71, 73, in reference to the damages to be awarded in these cases, seems to go farther," citing *Weaver* v. *Bachert*, 2 Penn. St. 80, which holds that seduction can not be given in evidence but circumstances may; *Baldy* v. *Stratton*, 11 Penn. St. 316; *Wells* v. *Padgett*; *Tubbs* v. *Van Kleek*; *Kniffen* v. *McConnell*.

This is the first attempt to show that the doctrine can be reconciled with the established principle that a wrongdoer can not recover from his accomplice compensation for what he has lost by committing the offence.

The argument of the learned judge is: A woman can not recover damages for her seduction directly or indirectly, because it is an offence on her part to consent to the seduction; but she may recover more damages, when she has been seduced, because of the condition in which seduction leaves her, than she may when she has not been seduced, *i. e.*, seduction as a fact constitutes no cause of action or basis for damages, directly or indirectly; seduction as a circumstance is the basis of increased damages.

We can not assent to this reasoning. If a woman recovers additional damages when she has been seduced, she is recovering indemnity for the consequences of an offence against the law, in which she has been a consenting actor.

If, during a promise of marriage, a woman should be seduced by a third person, could she recover more damages against her promisor in an action for a breach of the promise on that account, as a circumstance? On the contrary, her yielding to such seduction would absolve the promisor entirely, or in some

jurisdictions would go in mitigation of damages. *Dupont* v. *McAdow*, 6 Mont. 227.

It follows clearly, then, that, if she may recover, it is only against the seducer, and really for the seduction. If she may recover such indemnity in an action of breach of promise of marriage, it is the only action of contract or tort known to the common law where it is allowable. In any case of tort, where the injury is the result of her own act and another's, her action is wholly barred by her contributory negligence. In any action of contract, she can not voluntarily enhance the damages and recover them so aggravated by herself.

*Sauer* v. *Schulenberg*, 33 Md. 288 (1870), relies on *Paul* v. *Frazier*, *Wells* v. *Padgett*, *Kniffen* v. *McConnell*, *Coil* v. *Wallace*, *Tubbs* v. *Van Kleek*, *Whalen* v. *Layman*, *Conn* v. *Wilson*.

*Sheahan* v. *Barry*, 27 Mich. 217 (1873), argues that seduction is itself a breach of the promise to marry, that the law does not regard the parties as equally at fault, and that the practice to admit such testimony is sustained by the common law and the sentiment of mankind.

A subsequent case, *Bennett* v. *Beam*, 42 Mich. 346 (1880), still further develops these views, as follows (p. 351): "That the act of seduction, under a promise of marriage, should go a great ways with a jury in estimating the damages, ought to be true both in law and fact. In many cases, the loss sustained from a breach of the agreement to marry may be but slight indeed; but never can this be the case where the lifelong blight which seduction entails enters into the case. Respectable society inflicts upon the unfortunate female a severe punishment for her too confiding indiscretion, and which the marriage would largely, if not wholly, have relieved her from. The fact of seduction should, therefore, go a great ways in fixing the damages, as in no other way could amends be made the plaintiff for the injury she sustained, or the defendant be properly punished for his aggravated offence. It would seem also to be in full accord with the sense of justice implanted in the heart of every right, high-minded person, and therefore with the reason of the common law."

The argument of the Michigan court is more logical than the

Massachusetts opinion, though the premises from which it proceeds are unstable. It denies first that the parties are *in pari delicto*, and states secondly that the doctrine is established by the common law. Neither of these statements is true, if predicated of the English common law as adopted by us. See opinion of Treat, C. J., in *Tubbs* v. *Van Kleek*. The American current of decisions, as we have seen, flows from the Massachusetts *dictum*.

In Michigan a statute was in force permitting a woman to sue her seducer for damages in the name of her parent if she were a minor, or in the name of any relative whom she might select if she were of full age. *Sheahan* v. *Barry*. This might have been construed to declare the public policy of Michigan, and nothing but the rules of pleading would then stand in the way of decision; but when the court proceeds to invoke the deceitful authority of the human heart, he forgets that that organ is figuratively the seat of the emotions and not of the understanding. The heart deals with individual cases, not with general principles, and the common law leaves sufficient scope for the sentiments of pity or righteous indignation in the latitude of penalties within which the court fixes sentences for crime, and in the still broader discretion of a petit jury in tort cases calling for vindictive damages.

*Williams* v. *Hollingsworth*, 6 Baxt. (53 Tenn.) 12 (1873), contains no citation and no argument. A new trial was granted on other grounds.

*Leavitt* v. *Cutler*, 37 Wis. 46 (1875), contains no argument.

*Collins* v. *Mack*, 31 Ark. 684 (1877), is the converse of our case of *Conlon* v. *Cassidy*. There were apparently two counts in the declaration, one for breach of promise, one for seduction. It was held that the first would lie, and the second might be treated as an allegation in aggravation of damages. The question is not discussed. The only citation is Sedgwick on Damages, 6th ed. 248.

In *Hattin* v. *Chapman*, 46 Conn. 607 (1879), there is no discussion and there are no citations.

*Bennett* v. *Beam*, 42 Mich. 346 (1880), we have already considered.

*Kurtz* v. *Frank*, 76 Ind. 594 (1881), cites cases to the effect that punitive damages may be allowed. The doctrine was already adopted in that State by *Whalen* v. *Layman.*

*Giese* v. *Schultz*, 53 Wis. 462 (1881), and the same case again before the court in 65 Wis. 488 (1886), grants a new trial twice because damages for sickness resulting from seduction were allowed. Cole, C. J., dissents, but on what ground does not appear.

*Kelley* v. *Highfield*, 15 Or. 277 (1887), is not in point.

*McKinsey* v. *Squires*, 32 W. Va. 41 (1889), is a bill in equity for breach of promise of marriage and seduction, and relies on *Sherman* v. *Rawson, Sauer* v. *Schulenberg, Wells* v. *Padgett, Kniffen* v. *McConnell.* The decision that the two causes of action can be joined in a bill in equity depends on a State statute.

*Bird* v. *Thompson*, 96 Mo. 425 (1888), affirms the law as theretofore settled in Missouri.

*Musselman* v. *Barker*, 26 Neb. 737 (1889), cites *Matthews* v. *Cribbett, Tubbs* v. *Van Kleek, Coil* v. *Wallace.*

*Lowden* v. *Morrison*, 36 Ill. App. 495 (1889), follows *Tubbs* v. *Van Kleek, Burnett* v. *Simpkins*, 24 Ill. 265 and *Fidler* v. *McKinley.*

*Daggett* v. *Wallace*, 75 Texas, 352 (1889), cites *Sherman* v. *Rawson* and *Kelley* v. *Riley*, 106 Mass. 339.

*Jennette* v. *Sullivan*, 63 Hun. (N. Y.) 361 (1892), follows the former New York decisions.

*Kaufman* v. *Fye*, 99 Tenn. 145 (1897), follows *Goodall* v. *Thurman* and *Williams* v. *Hollingsworth.*

The remarkable unanimity among so many eminently respectable tribunals in imposing this doctrine upon the common law must be founded on some supposed natural equity, and this can be none other than the conviction, which some of the opinions quoted come very near expressing, that sexual intercourse between persons who are engaged to marry each other is not criminal. But this is not the doctrine of the common law. Such an act could be innocent only if intended as an assumption of the marriage relation. The common law made *verba de futuro cum copula* evidence of marriage itself, not the basis of an action for breach of promise. The question in such cases

is one of intention purely. *Peck* v. *Peck*, 12 R. I. 485. If the intention is to consummate a marriage, it is a marriage and the act is innocent; if it is not so intended by the parties, the act is criminal in both. The presumption that the intercourse is innocent therefore precludes an action for not doing what the presumption says has been done. See I. Bish. Mar. Div. & Sep. § 353 and following. And whether the act be innocent or guilty, the maxim *volenti non fit injuria* takes from both consenting parties the right to sue at common law.

Against these authorities we are constrained to adhere to the conclusions of Treat, C. J., in *Tubbs* v. *Van Kleek;* of the court of Kentucky, in *Burks* v. *Shain*, 2 Bibb. 341; of the court of Pennsylvania, in *Weaver* v. *Bachert; Hay* v. *Graham*, 8 Watts & Serg. 27; and *Baldy* v. *Stratton;* of Judge Breese in *Fidler* v. *McKinley;* of Potts, J., in *Coil* v. *Wallace*, and upon the uniform practice of our own court since the time of Chief Justice Greene.

If the question were to be decided with reference to the justice and expediency of the present law, we should doubt the propriety of making the suggested alteration.

The criminal statutes now make a wide distinction between the seducer and his victim in the punishments they allot to each. If the female be under eighteen years of age, or if the seduction be obtained by fraud or threats, the seducer may be imprisoned for five years. The penalty may be ten years' imprisonment if the female is under sixteen—Gen. Laws cap. 281, §§ 4, 5—but there can be no conviction upon the uncorroborated testimony of the *particeps criminis*. The common law gives to the father or master of a minor female an action for damages against the seducer in which vindictive damages are allowable; but otherwise holds both parties as free agents to an equal responsibility. It may be doubted, in the words of Chief Justice Parsons, in *Paul* v. *Frazier*, in case the lawmakers give an action to a woman to recover for her own seduction, "whether seductions will afterwards be less frequent, or whether artful women may not pretend to be seduced in order to obtain a pecuniary compensation." And may not an artful woman who has had illicit relations with a man as easily pretend to have received a prom-

ise of marriage in order to recover damages for seduction? Fraud and cunning and avarice and desire are not exclusive characteristics of either sex. We may not assume that the roles of temptress and tempted, as cast in the earliest recorded human tragedy, are always inverted in the dramas of modern society.

It seems to us that social morality will not be promoted by relieving either sex of legal responsibility for voluntary action. In California, Indiana, Iowa, and Tennessee the legislatures have taken a different view and have expressly conferred upon a seduced woman, if unmarried, a right of action for her seduction—note to *Weaver* v. *Bachert*, 44 Amer. Dec. 166 and cases cited. If the change in our law is thought desirable it should be made by the General Assembly, as we have said before. What the law ought to be is for the legislature, not for the court, to decide.

The plaintiff's counsel argues that, if this evidence was not pertinent to aggravate the damages, it was admissible to prove, first, the contract of marriage; secondly, the breach of that contract. He is not without citations which support both propositions; but sound reason and the weight of authority are on the other side. For the first purpose this evidence could be deemed relevant only in a community where such misconduct was an ordinary and usual incident of betrothal. It would be an unwarranted insult to virtuous men and women to adopt such a premise. The remarks of Howk, C. J., in *Felger* v. *Etzell*, 75 Ind. 418, 421, are just and conclusive. He says "We are aware that there are many cases in which it has been held that evidence of the conduct of the parties towards each other is admissible as tending to prove the existence of a promise of marriage; but such evidence, we think, should be limited, and, so far as we are advised, it has been limited, to the open, visible, or public conduct of the parties toward each other. The illicit intercourse of parties is generally consummated in the strictest privacy and secrecy, and is known only to the parties themselves; and the evidence of the parties, or of others, in regard to such intercourse, can have no possible tendency to prove the existence of a promise of marriage. This must be so,

as it seems to us, in the very nature of things, unless it can be correctly said (and we need hardly say that the proposition is unreasonable and untenable) that illicit sexual intercourse naturally, necessarily, or generally, attends upon the mere promise of marriage, and is, therefore, one of the *indicia* of the existence of such promise."

Such evidence is held not to support an alleged promise in *Bleiler* v. *Koons*, 132 Pa. St. 401; *Boyer* v. *Sherer*, 28 Ill. App. 545.

As is said in *Dupont* v. *McAdow, supra:* "We think that the fact that a man has lived with a woman as his mistress raises a very strong presumption that he does not intend to marry her at all."

Neither is the evidence logically admissible for the second purpose. While seduction may be considered an outrage which violates the trust reposed in the stronger party, it is not a refusal to marry, although by consenting to it the weaker party may invite the repudiation of the promise. But it can not be seriously urged that such circumstances are ever introduced by a plaintiff except with the object of increasing damages. The record plainly shows that such was the intent in this case. A meritorious case could hardly arise where the contract and the breach of it could not be proven by other evidence.

In England, by Stat. 32 and 33 Vict. c. 68, § 2, the testimony of a party will not support a verdict "unless his or her testimony shall be corroborated by some other material evidence in support of such promise"—2 Ency. Laws of England, 238; but it has been held in Rhode Island that no such corroboration is necessary here. *Kelley* v. *Brennan*, 18 R. I. 41.

The evidence, as we conclude, was improperly admitted, and was so calculated to prejudice the jury against the defendant as to entitle him to a new trial.

(2) Of the other exceptions taken by the defendant during the trial, only two are relied upon in his brief and argument before this court.

He complains that his argument to the jury was unduly restricted by the court, in that he was not permitted to comment upon the fact which appeared in evidence, that some six months

before the beginning of this suit a similar action for alleged breach of promise of marriage had been brought by one Mary J. Fuller, who was at one time housekeeper in a certain hotel in which this plaintiff was at the same time assistant housekeeper. The record and the affidavit do not show what inferences counsel was attempting to draw with sufficient definiteness to enable us to pass upon the legitimacy of them. So far as we can see, the circumstances shown had very little, if any, relevancy to the issues of the case. The justice who presides at a jury trial must exercise a sound discretion in confining counsel to the discussion of vital issues, and we can not say that such discretion was abused in the present case.

The last exception is based upon the introduction of testimony apparently showing an attempt by the defendant to compromise the plaintiff's claim. Such evidence is, of course, inadmissible. In this case the defendant's counsel say that it was so insidiously led up to that no fair opportunity to object was given. We think the record shows some ground for this complaint; but as a new trial must be granted on other grounds we need not further discuss this exception, and for the same reason we express no opinion upon the weight of the evidence.

Petition for new trial granted, and case remitted to the Superior Court for further proceedings.

*Joseph J. Cunningham and Ryan and Nickerson,* for plaintiff.
*Barney & Lee and Prince H. Tirrell, Jr.,* for defendant.

