The opinion of the Court was drawn up by
Kent, J.
It was decided by the Court, when this case was before it, as reported in the 36th volume of Maine Reports, 50, that the' plaintiff was, upon the facts, entitled to redeem as owner of two acres of the premises, originally deeded to Hubbard in severalty, out of the whole tract. It is undoubtedly well settled, when the property mortgaged is afterwards conveyed to two or more persons in distinct parcels, that the owner of a part may redeem the whole mortgage and hold the premises as security, until the own *175 ers of the other part pay their proportion of the mortgage debt. Whether such owner of a separate portion could compel a discharge or assignment of the whole mortgage, when the holder of the mortgage offers to release the parcel thus held, and to quitclaim all right thereto under the mortgage, is a question which might cause us to hesitate, if the plaintiff had no other ground on which to rest his claim for redemption.
But the principal claim of the plaintiff embraces the whole right in equity, (except as to small portions hold by other persons,) by virtue of a sale and conveyance to him of the equity of redemption, on an execution against Bartlett Sheldon, in December, 1847. The facts are stated in the case .in the 36th volume of Maine Reports, before referred to, and it is unnecessary to repeat them.
The first question to be considered is, what effect shall be given to the conveyance of Bartlett Sheldon to Lot and Josiah Myrick, and the bond given back by them. At the date of the deed and bond, Bartlett Sheldon was the owner of the equity; he conveyed in warranty to Lot and Josiah Myrick, January 5, 1846. This deed alone would have extinguished the equity, and would have united the whole legal and equitable title in them. But they; at the same date, gave back to Sheldon their bond conditioned to quitclaim the premises, on payment of the three notes secured by the said mortgage of 1837, within four years. This bond recites, in the condition, the facts as to the conveyance and mortgage of 1837, and recognizes Bartlett Sheldon’s right to the equity, by deed from N. W. Sheldon. The bond, therefore, is of the same date as the deed, refers to the conveyance made on that day of the same premises, and provides for a re-conveyance, on payment of the notes secured by the first mortgage, within a certain time. It was clearly all one transaction, and there is no evidence that by an act of delivery, the deed and bond became separated. It was a case contemplated by the statute, (R. S. of 1841, c. 91, § 27, and R. S. of 1857, c. 73, § 9,) where it is in *176 tended that the estate, conveyed by an absolute deed, may be defeasible by á bond. The bond acts directly on the title, requiring, on certain terms, a conveyance of it. Noyes v. Sturdivant, 18 Maine, 104. It was, in fact, á mortgage in equity, and must be so treated. It was not a mere agreement for a repurchase. It was for security of a prior debt, and the repayment of money already due. If there had been no prior mortgage, the deed and bond would have created an equity in Bartlett Sheldon, commencing at that time, according to numerous authorities, in this State and elsewhere.
But, at the time of this transaction, Bartlett Sheldon, in fact, was the owner of the equity of redemption from the first mortgage in 1837. He conveys to the surviving mortgagees in that mortgage in 1846, and they give back the bond to quitclaim the premises to him upon payment, within a certain time, of the notes secured by the first mortgage. If this deed and bond created a new and independent equity, it was substantially the same equity that before existed. It secured the same notes, required the payment, for redemption, of precisely the same sum, and to the same parties in interest. The only difference is, that the time of payment is somewhat extended by the bond. There is no formal discharge or surrender of the first mortgage, nor are new notes taken. Myrick and others, it appears from the answers and proof, retained the first mortgage and notes, and actually took possession, in 1850, to foreclose the first mortgage of 1837, and all the forms of foreclosure were apparently complied with. In fact, all the parties seem to have treated the first mortgage as undischarged. Nothing will discharge a mortgage but payment or release. Crosby v. Chase, 17 Maine, 369.
The decision of the question, whether the first mortgage, with the equity under it, was discharged, and an entirely new one created in 1846, would seem to be of less consequence to this plaintiff (except as to his two aeres) than to the others who hold parcels of the estate by conveyances in *177 1842, from the mortgager, N. W. Sheldon. The plaintiff seems to have purchased all the equity of B. Sheldon, under each of the conveyances, — viz., his right to redeem from the original mortgage, and also from the mortgage of 1846, created by the bond. But, if the transaction in 1846 destroyed the first mortgage and put back the title to the whole tract absolutely in Myrick and others, and a new equity, independent entirely of the first, was then created, the title of the intermediate purchasers of the small parcels would seem to be cut off, as against these defendants. Unless the first mortgage is yet undischarged and open to redemption, they would seem to have lost all right to redeem.
But it is unnecessary to discuss that question, as we are satisfied that the transaction in 1846, and the deed and bond between the same parties that were interested in the first mortgage, amounted in fact, and in law and equity, simply to a re-affirmation of the first mortgage, and not to its discharge. The only difference is, that an extension of the time of payment of the notes secured by the first mortgage is granted — and, with this exception, the parties stand precisely in the same relation to each other as before. The "new equity is the same as the first equity; viz.: a release of the premises upon payment of what is due on the first mortgage. We think that Bartlett Sheldon had that right of redemption when he took back the bond, and that, unless he-parted with it before the levy and sale, under which the plaintiff claims title, the plaintiff stands in his place as to this right.
It is insisted, that, before this levy and sale of the equity, Bartlett Sheldon had assigned his bond to William Sheldon in good faith, and that thereby whatever interest Bartlett had was legally transferred to William. The question of the validity, good faith and effect of that assignment have been very fully and ably discussed in the arguments of the counsel on both sides. The plaintiff," however, insists that William can set up no right under that assignment as against *178 him, even if it was made in good faith, and is otherwise valid, because he says it was never recorded.
When it became the settled law that a bond given at the same time, and as part of the same transaction, might operate as a defeasance, and create a mortgage and equity of redemption, as a mortgage deed between the parties would, it became necessary, for the protection of subsequent purchasers and creditors, that the same notice by record should be given of the bond as of the mortgage deed. It would be manifestly unjust, and would open the door for frauds by secret trusts, not only to allow the effect of a deed of defeasance to a personal bond, but to permit such a result against subsequent purchasers or creditors, without any record or actual notice of the existence of such a bond.
The statute before referred to (R. S., 1841, c. 91, § 27) provides that such a bond shall not defeat an absolute estate against any one except the maker of such bond of defeasance, unless it is recorded.
The law looks upon such a bond in a two-fold aspect:— one view regarding it as a personal obligation, not touching the realty, and to be enforced by judgment, in case of breach, out of the money named as the penalty; the other as a defeasance in certain cases, and creating an equity of redemption of the real estate, and an interest in the freehold. t
No record is required, so far as it is a personal obligation; but it is required before it can operate, as a deed may, to create or to convey an interest in land. An equity of redemption is real estate, and requires the same formalities for its conveyance as other interests in land.
If we look at the original mortgage of 1837, and the equity under it, it does not appear that Bartlett Sheldon ever conveyed that to William, by any deed or instrument, unless it is conveyed by assignment of the bond. That bond, it appears, was assigned to William; but neither the bond nor its assignment was ever recorded, and no actual notice of,its existence, to the plaintiff, is asserted.
*179 If that bond is to be regarded as operating as a defeasance, then, by the statute, it is good without record against the Myricks, and creates an equity of redemption in Bartlett Sheldon, which he might convey as against every one but subsequent purchasers, or attaching creditors of Myricks, the obligors. Subject to the same exception, the equity of Bartlett might be attached by his creditors, as it was. The record is not an essential element in the legal transmission of title. It is only a subsequent act, which the party must see performed, to protect himself against such purchasers or creditors, unless the law expressly makes an instrument void if not recorded. As to everybody else, the title is' good.
This equity Bartlett Sheldon undertakes to convey to William, by assigning the bond. Is it necessary to protect that, as a conveyance of the equity against the attaching creditors of Bartlett, that the assignment shall be recorded ? The same reasons exist, on this point, in case of an assignment, as in case of the first conveyance. It would seem to be mere mockery to require a mortgage deed or bond to be recorded, before the mortgager or obligor could assert his title to the equity as against creditors and purchasers, and to permit the holder of the equity under the mortgage to convey his title secretly to another, by deed or assignment unrecorded. It is very clear, if the mortgager, holding an equity under deeds, should convey his equity by deed, that such deed must be recorded to protect the title, except as to the grantor. Why must not the same rule apply to an equity created and existing only by a bond? So far as the bond is personal, the assignment may bo good without recording ; but, when it assumes the character and rights of a deed of conveyance, or creation of an estate in realty, if that estate can be transferred by an assignment of the bond, it must bo because the bond is as a deed, and can claim no higher rights than a deed, nor protect the title except by the same reedrd that is required to give n'otice of other conveyances of the title in real estate. Porter v. Millet, 9 Mass., 101; Wise v. Tripp, 13 Maine, 9.
*180 It was decided in Newhall v. Pierce, 5 Pick., 450, that a bond operating as a defeasance must be recorded. This is ■required by our statute.
In Clark v. Jenkins, 5 Pick., 280, it was decided, as a necessary result of the ruling, that an assignment of a mortgage must be recorded, to protect the title. Pierce v. Odlin, 27 Maine, 341.
" As an instrument of defeasance affects the title, there would seem to be the same necessity for recording it as for recording the deed, and for the lilce purpose of giving notice. Such, undoubtedly, was the object of the Legislature in framing the law.' By analogy, this section should receive a similar construction, in reference to unrecorded instruments of defeasance, with the first section of the statute, in respect to unregistered deeds.” McLaughlin v. Shepherd, 32 Maine, 147. The same reasoning, by analogy, must apply to a transfer of title by assignment of the bond.
Indeed, this may be regarded as a well settled general principle, that all instruments which are to operate as the conveyance of a title in and to real estate, must be recorded, to protect the title, thus acquired, against subsequent purchasers and attaching creditors of the party thus parting with his title. It is the only sound and safe rule to protect the honest and to defeat the plans of the fraudulent, concealing debtor.
In this case, Bartlett Sheldon had an equity liable to attachment by his creditors. His assignment to William could not defeat the levy, because it was not recorded. The opinion of Judge Cutting, which follows, explains and illustrates the doctrine fully.
This view renders it unnecessary to consider the question before alluded to — viz., whether the assignment was bona fide, or colorable and fraudulent. ’
The defendant’s counsel, in his argument, raises some questions as to the legality of the sale by the sheriff, and contends that the return is defective, and the amendments that have been made unauthorized. It is almost impossible *181 to ascertain the exact state of facts in relation to the amendments, as no case is made up, and the counsel do not agree entirely as to the facts. Indeed, we do not see how these questions are before us. It appears, as well as we can gather the scattered facts,.that, in 1852, the case was heard by a single Judge at Nisi JPrius, according to the law then in force ; that the question as to the amendments by the officer was then considered, and the amendments allowed — the defendants duly objecting. The whole case was carried to the law Court, upon the findings and rulings of the Judge; and it was upon the exceptions, thus filed, that the case was heard and determined, as reported in the 36th volume of our Eeports. Nothing is said, in the opinion, with reference to the amendments. But it was the duty of the defendants then and there to urge any objections they had to the allowance of the amendments, and none'having been sustained, the ruling must stand. A minute from the docket shows that, at October term, 1855, the officer had leave to amend according to the facts; and it would seem that he did thus amend. No objection appears on the docket. The right to amend had been secured by the former proceedings.
In looking at the amendments, we doubt very much whether any amendments, in reference to the points suggested in the argument, were necessary. All the acts, as to giving notice stated, may well be referred, as to time of performance, to the date given as the time of the first act — which was more than thirty days before the sale. All of them were necessarily before the sale, as the officer says he aftervjards sold. As to the omission of the word " public,” before " newspaper,” we cannot deem it fatal. A newspaper is of itself a public print, and imports publicity. A private newspaper would be, according to the definition of the word "newspaper,” a contradiction in terms. The word "public” is omitted in the corresponding section in the E. S. of 1857, c. 76, § 30. We consider the amendments properly allowed, if they are necessary.
The result is, that the plaintiff must have a decree in his *182 favor, that he may redeem the mortgage of 1887, by paying the amount found due thereon, and, if necessary to protect his rights, an assignment thereof; that this redemption must be for the benefit of himself, as owner of the two acres, and also of the equity purchased at sheriff’s sale; that it must also be for the benefit of Stetson and Ely, as they are owners of the one and three-fourth acres, conveyed to Stetson by N. W. Sheldon, and in proportion and according to their present interests in that parcel.
In 1843, when N. W. Sheldon conveyed his rights and the equity in the whole tract, (with exception of a few acres before conveyed,) he took back a mortgage from Bartlett, to- whom he gave the deed of a portion, to secure $696,-28, "being on the west side of the county road.” This gave to N. W. Sheldon a still existing interest to redeem the first mortgage on his proportion of it. If this was after-wards conveyed to Huston, he might also be called on to contribute. But it is asserted, and not denied, that, in the description in the deed to Huston, land on the east side of the road only is included. In that portion N. W. Sheldon had no interest when he gave his deed to Huston. If this be so, then N. W. Sheldon must contribute according to the amount of his claim, which is the debt now due on the mortgage to him.
The value of the several parcels at the present time, disregarding actual permanent erections, and improvements made since the mortgage, by any party, must be the rule of apportionment. Or, as it is sometimes stated, the present value, in case no such improvements or erections had been made.
A master must be appointed to ascertain and report—
1. What is justly and legally due on the notes secured by the mortgage of 1837, after deducting rents and profits received, or which ought to have been received according to the statute, by the mortgagees, after their entry to foreclose.
2. What is the present value of all the premises covered *183 by said mortgage — not including permanent improvements made on any part since the mortgage.
3. What is such value of the portion of the If acres held by Stetson, and what that part held by Fly.
4. What is such value of the part of the premises conveyed back in mortgage by Bartlett Sheldon to N. W. Sheldon.
5. To state, on these principles and this decision, what portion of the amount found due on the mortgage notes, and to be paid to the defendants as mortgagees, is to be contributed respectively by the plaintiff; by Stetson; by Fly; and by N. W. Sheldon as mortgagee. The latter must contribute in the proportion that the amount due on the mortgage to him bears to the whole value of the parcel thus mortgaged to him. The holder of the equity of redemption of that mortgage must bear the remainder justly chargeable to that parcel.
The plaintiff will be entitled to costs against the original defendants, who are mortgagees. He claims cost, or a contribution towards his expenses, from the other parties who are benefited by the redemption, on the ground, that by his persistent efforts their rights have been protected, which otherwise would have been lost entirely. It certainly does appear equitable, that those who derive a direct benefit from the result, obtained by the efforts and expenses of one of the parties severally interested therein, should bear a portion of the expenses.
This, however, may bo modified by peculiar circumstances. If the other parties’ legal rights could have been secured without redemption, and they did not desire the moving party to establish the common right, the equitable claim might not be supported. We think these questions in reference to cost can be better determined upon the coming in of the master’s report. But, if the plaintiff requests it, the master may report what amount of actual cost and expenses, beyond those which can be legally taxed, the plaintiff has *184 necessarily and properly incurred. The whole case, then, can be disposed of by a final decree.
The entry on the Docket of the County Court to be : — "Plaintiff entitled to redeem. A master to be appointed by the Court sitting in the county, to report upon the points as set forth in the opinion of the whole Court, and upon the principles therein stated: — and all further proceedings to stay until the coming in of the report of the master.”
Tenney, C. J., Rice, Cutting and Goodenow, JJ., concurred.