## MARY E. RUSSELL *vs.* ELIJAH COWLES.

In an action for breach of promise of marriage, evidence of preparations for performing the contract, made by the plaintiff in the absence of the defendant, and not in any way connected with him, is inadmissible to prove the plaintiff's assent to a mutual promise of marriage.

ACTION OF CONTRACT for breach of promise of marriage. The answer denied the promise. At the trial in the superior court the plaintiff testified that mutual promises of marriage were made between the parties on the 7th of August 1858, and that they then agreed that the marriage should take place in the November following; that shortly after, in preparation for the marriage, she bought a velvet cloak, a small quantity of crockery-ware, and some cloth which she made up into various articles of bed clothing; and that she visited a furniture shop, and examined and learned the prices of various articles of furniture. This evidence was admitted without objection.

The defendant afterwards contended and asked the court to instruct the jury that these acts of preparation were not to be regarded as evidence tending to prove the promise of marriage, but were admissible merely in proof of damages, if the contract and its breach was otherwise proved. But *Rockwell*, J. de-

clined so to rule; and instructed the jury that they might regard these acts, not only upon the question of damages, but also as tending to prove her assent to a mutual promise of marriage; and that the burden of proof was upon her to show a mutual promise and engagement of marriage, which there was other evidence tending to show. The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*R. A. Chapman & E. Dickinson,* for the defendant.

*C. Delano,* for the plaintiff, cited *Hutton* v. *Mansell,* 3 Salk. 16; *Wightman* v. *Coates,* 15 Mass. 5; *Culver* v. *Dwight,* 6 Gray, 444; *Peppinger* v. *Lowe,* 1 Halst. 384; *Moritz* v. *Melhorn,* 13 Penn. State R. 331; *Wetmore* v. *Mell,* 1 Ohio State R. 26; *Munson* v. *Hastings,* 12 Verm. 346; *Whitcomb* v. *Wolcott,* 21 Verm. 368; Chit. Con. (10th Amer. ed.) 586, 587; 1 Parsons on Con. 554 & notes.

HOAR, J. The acts or declarations of a plaintiff, made or done without the knowledge of the defendant, are certainly a very dangerous species of evidence, upon the trial of an issue whether any contract was made between them. In an action for a breach of promise of marriage, the purchase of articles of clothing and furniture in preparation for marriage would be a fact admissible in evidence upon the question of damages, if a contract to marry were first established. In such a case it would be evidence of an act done by the plaintiff toward the execution of the contract, to which she was directly and properly induced by the promise of the defendant. The evidence of such acts on the part of the plaintiff in this action was therefore rightfully submitted to the jury, to be weighed by them, if they should find for the plaintiff. But it certainly should have been accompanied with careful instructions as to the true effect to be given to it, because its nature was such as might probably make an impression upon the jury which would not be legitimate. They might think that the plaintiff would not have acted in such a manner, unless a promise of marriage had been made to her by the defendant; and thus infer that a contract had been made by one party, from conduct of the other over which he had no control, and for which he could not be responsible.

The jury were instructed that they might regard the prepara-
tions made by the plaintiff for the marriage, "not only in
respect to the question of damages, but as tending to prove the
plaintiff's assent to a mutual promise of marriage." It is not
perfectly obvious what is meant by this language. There
could not be "a mutual promise of marriage," of course, with-
out the plaintiff's assent. If a mutual promise of marriage
were satisfactorily proved, it would be superfluous and unne-
cessary to introduce any further evidence of the plaintiff's
assent to it. But we suppose the court intended to rule that,
if the defendant's promise was proved, this evidence was com-
petent to show that the plaintiff assented to it, and that the
promise thereby became mutual.

The promise to marry, not being often made in the presence
of witnesses, or in writing, has usually, in cases of this nature,
been proved by circumstantial evidence. As the promise of the
plaintiff is the consideration of the promise of the defendant,
both must be proved in order to support the action; and it is
well settled that each may be established by the same species
of proof, and that the conduct and deportment of the parties
toward each other may furnish satisfactory evidence of the
fact that a mutual promise of marriage has been made between
them. *Wightman* v. *Coates*, 15 Mass. 1. *Hutton* v. *Mansell*, 3
Salk. 16, and 6 Mod. 172.

In *Wightman* v. *Coates* the evidence of the mutual promise
was the conduct and letters of the defendant. In *Hutton* v.
*Mansell* an express promise by the defendant was proved; and,
according to the report in 6 Mod., it was held to be sufficient
evidence of the promise by the plaintiff, "that it appeared that
she countenanced the defendant's promise, and by her actions
at that time behaved herself as if she agreed to the matter."

In *Peppinger* v. *Lowe*, 1 Halst. 384; *Moritz* v. *Melhorn*, 13
Penn. State R. 331; and *Wetmore* v. *Mell*, 1 Ohio State R.
26, it was held that the conduct and declarations of the plain-
tiff, not in the presence of the defendant, were admissible as
evidence of her assent to the promise made by him. These
last authorities would sustain the ruling of the court in the case

before us; but it becomes important to consider whether they have not extended the application of the doctrine farther than previous decisions warrant, and without sufficient regard to the principle on which those decisions rest.

Undoubtedly any contract, not required by law to be evidenced by writing, may be proved by circumstantial evidence. The conduct of the defendant may be evidence of a promise by him in favor of a plaintiff, because the conduct or declarations of a party are upon general principles competent evidence against him; but the conduct or declarations of a party are not generally evidence in his own favor. And there seems to be nothing in the nature of the contract of marriage, which should distinguish it from other contracts in this respect. If one party promise marriage to the other without a corresponding promise made to him, it is only an offer of marriage, and not a contract. It is an offer revocable, because without consideration to support it until it has been accepted, and the acceptance and corresponding promise have been communicated to the party by whom the offer was made. The acts of the plaintiff, until they are communicated to the defendant, are not binding upon the plaintiff, as constituting a contract. Why should they be evidence for the plaintiff of any part of a contract to bind the defendant? In the case of *Hutton* v. *Mansell*, there is nothing to show that the behavior of the plaintiff, which was held to be sufficient evidence of her promise, was not her behavior to the defendant. In the case of *Munson* v. *Hastings*, 12 Verm. 346, cited by the plaintiff, the purchase of furniture by the plaintiff for the purposes of the marriage was known to the defendant, and apparently approved by him. In *Cole* v. *Cottingham*, 8 Car. & P. 75, it was said that declarations by the defendant of his readiness to marry the plaintiff, not made in her presence, were not proof of a promise of marriage. And we think the distinction has not been observed in the cases from Pennsylvania, Ohio and New Jersey, which depend upon *Hutton* v. *Mansell*, between the effect of conduct and deportment by a plaintiff toward the defendant, assenting to and countenancing his proposal, and the effect of acts done in his absence, without his privity, which should not affect his rights.

In the case at bar, there seems to be no evidence that the acts of the plaintiff were done with any reference to a marriage with the defendant, except her own testimony as to their object; and this is merely a statement of her own purposes, not appearing to have been disclosed or communicated to him. The acts themselves, if they tend to prove the plaintiff's intention to be married, have no tendency to prove a purpose to marry the defendant rather than any other person.

The presiding judge refused to rule that these acts "were not to be regarded as evidence tending to prove the promise of marriage." The instruction which he gave was without any qualification respecting the knowledge of these acts on the part of the defendant.

But we think that the mutual promise of marriage is not composed of two distinct parts, unconnected with each other, and to be severally proved by independent evidence. A promise by the defendant at one time and the assent of the plaintiff at another will not do. The proof must be sufficient to show that the defendant not only made the promise, but received the consideration for it. The plaintiff's "assent to the mutual promise" must have been communicated to him, or, in other words, she must have made a promise to him, to make his promise binding. The conduct of the plaintiff in the absence of the defendant, and not in any way connected with him, has no more tendency to prove that he received her promise than it has to prove that he made one to her. On the other hand, her deportment and behavior toward him, in connection with his behavior toward her, may furnish sufficient evidence of a mutual promise.                    *Exceptions sustained.*