[Argued October 30, 1893; decided January 8, 1894.]

## OSMUN *v.* WINTERS.

[S. C. 35 Pac. Rep. 250.]

1. Breach of Promise—Seduction as an Element of Damages—Code, § 36.—In actions for breach of promise, seduction under the promise may be shown in aggravation of damages, notwithstanding section 36, Hill's Code, which gives to an unmarried woman over twenty-one years of age a right of action for her own seduction.

2. Idem.—While a jury may consider seduction in estimating damages for a breach of promise to marry, they are not obliged to do so, and an instruction that the jury "must" so consider it, is prejudicial error.

3. Breach of Promise—Statements by Plaintiff.—In an action for breach of promise of marriage, in which defendant denies having made the offer, evidence that plaintiff, in the absence of defendant, told other persons of the engagement, is inadmissible.

4. Breach of Promise—Evidence.—In an action for breach of a promise of marriage, it is proper to show how the parties were treated by their friends, and their own conduct towards each other. *Kelly* v. *Highfield*, 15 Or. 277, approved and followed.

5. Evidence of Reputation of Witness.*—It is not competent to show the reputation of a witness for truth and veracity unless such reputation has been attacked. *Sheppard* v. *Yocum*, 10 Or. 413–414, approved and followed.

6. Practice in Supreme Court—Mandate.—The mere fact that a party against whom a judgment for costs has been entered in the supreme court is insolvent, is not ground for withholding the mandate.

Appeal from Multnomah: E. D. Shattuck, Judge.

This appeal is brought by the defendant, H. D. Winters, to reverse a judgment recovered against him by May Osmun, in an action for a breach of promise of marriage. The complaint avers a mutual promise of marriage between the plaintiff and defendant, made on or about the seventeenth day of January, eighteen hundred and ninety-two, to be performed on or about the second day

---

*Note.—On this point see also *Cooper* v. *Phipps*, 24 Or. 357.—Reporter.

of May, eighteen hundred and ninety-two, and a postponement thereof at the request of the defendant until the second day of August following; and "that on or about the tenth day of April, eighteen hundred and ninety-two, in the city of Portland, county of Multnomah, and state of Oregon, the defendant invited the plaintiff into his parlor in defendant's building, situated on the northeast corner of Fifth and Davis Streets, in said city, county and state, and while there, under promise of marriage, the defendant took improper liberties, seduced, and had carnal intercourse with said plaintiff, and thereafter, by repeated promises of marriage, induced plaintiff to continue said sexual intercourse with said defendant, and to live with him, and by reason thereof this plaintiff has suffered great mental anguish, her health was greatly impaired, and her character and reputation ruined," and further avers a breach of contract by the defendant on or about the fourteenth of August, eighteen hundred and ninety-two. The answer contains a specific denial of all the allegations of the complaint, and for a separate defense avers that plaintiff was an unchaste, lewd, and lascivious woman, specifying certain acts of lewdness on her part, all which were unknown to the defendant at the time the several alleged promises of marriage were entered into. The trial resulted in a verdict and judgment in favor of the plaintiff for the sum of ten thousand five hundred dollars, from which defendant brings this appeal, alleging error in the admission of testimony and in the instructions to the jury.

Reversed.

Mr. *James Finley Watson* ( Messrs. *Edward B. Watson* and *R. B. Beekman* on the brief), for Appellant.

Mr. *Alfred F. Sears, Jr.* ( Messrs. *Austin F. Flegel, Henry Stanislawsky, Patrick J. Bannon, Henry E. McGinn,* and *Nathan D. Simon* on the brief), for Respondent.

Opinion by Mr. Justice Bean.

The first question arises upon the following instruction: "This is an action for a breach of promise of marriage, and although there has been a good deal of evidence introduced here bearing upon the question of seduction, which is set up in the pleadings of the case, you must not consider seduction as the principal element in the case. All that can be claimed for or gained by the charge of seduction in these pleadings is an aggravation of damages, and you have nothing to do with that question unless you first find that there was a promise of marriage, and that the promise was broken. The defendant denies that there was any seduction. The plaintiff alleges that there was a seduction; and before you can make any use of that matter of seduction in determining the case, you must find the fact that there was a seduction substantially as alleged. And then, if you find from the whole matter — the whole case — that the promise of marriage was made, and justification for breaking off the promise has not been proven, and that there was seduction, then you must consider the seduction as well as the allegations of justification for refusing to carry out the promise of marriage, in assessing the damages." To all that portion of this instruction relating to seduction, and directing the jury to consider the same as an element of damages, the defendant excepted, and now assigns the same as error. Several objections are made to this instruction, and of these in their order. First, it is contended that there is no sufficient allegations in the complaint of seduction under a promise of marriage; but in this contention we are unable to agree with counsel. It seems to us that by a fair construction of the complaint it is averred that the alleged seduction was under a promise of marriage.

1.　It is contended that seduction cannot be alleged

and proved as an element of damages in an action for a breach of a promise of marriage. Upon this question there is some slight conflict in the books, but the decided current of authority, both in this country and England, is that, while damages for seduction, as a distinct ground of action, cannot be added to the damages which plaintiff is entitled to recover for a breach of the promise to marry, it may, if alleged, be shown in aggravation of damages, on the ground that compensation for the injury she has received by the breach of the contract cannot be justly estimated without taking into consideration the increased humiliation and distress to which she has been exposed by the defendant's conduct. The action is nominally for a breach of contract, but the damages are awarded upon principles more commonly applicable to actions of tort; and, if seduction is brought about by a reliance upon the contract, it may in no very indirect way be said to be a breach of its implied conditions. "Such an engagement," says Mr. Justice Campbell, "brings the parties necessarily into very intimate and confidential relations, and the advantage taken of those relations by the seducer is as plain a breach of trust in all its essential features as any advantage gained by a trustee, or guardian, or confidential adviser, who cheats a confiding ward, or beneficiary, or client, into a losing bargain. It only differs from ordinary breaches of trust in being more heinous. A subsequent refusal to marry the person whose confidence has been thus deceived cannot fail to be aggravated in fact by the seduction. The contract is twice broken. The result of an ordinary breach of promise is the loss of the alliance and the mortification and pain consequent on the rejection. But in case of seduction there is added to this a loss of character, and social position, and not only deeper shame and sorrow, but a darkened future. All these spring

directly and naturally from the broken obligation. The contract involves protection and respect, as well as affection, and is violated by the seduction as it is by the refusal to marry. A subsequent marriage condones the first wrong; but a refusal to marry makes the seduction a very grievous element of injury that cannot be lost sight of in any view of justice": *Sheahan* v. *Barry,* 27 Mich. 219. The common-law practice is substantially uniform in admitting such evidence, and is, we think, based upon sound principles: 3 Sutherland on Damages, 316; Cooley on Torts, 510; 1 Bishop on Marriage, Divorce, and Separation, § 232; *Hattin* v. *Chapman,* 46 Conn. 607; *Sauer* v. *Schulenberg,* 33 Md. 288, 3 Am. Rep. 174; *Kniffen* v. *McConnell,* 30 N. Y. 285; *Sherman* v. *Rawson,* 102 Mass. 395; *Kelley* v. *Riley,* 106 Mass. 339, 8 Am. Rep. 336; note to *Weaver* v. *Bachert,* 44 Am. Dec. 178; *Berry* v. *DaCosta,* L. R. 1 C. P. 331; *Millington* v. *Loring,* 6. Q. B. Div. 190.

But it is claimed that, our statute (section 36) having given a woman over twenty-one years of age a right of action for her own seduction, the reason of the old rule has ceased, and it ought not to prevail in this state. This would seem to be the opinion of Mr. Parsons, for he says: " By the strict rules of the law they (damages for seduction) should, we think, be excluded where the plaintiff was in actual or constructive service, or lived in a state in which the statute law gave her an action for seduction, and not otherwise; and the weight of authority seems to be so." But he seems to think that while the strict rule of law would exclude the evidence as irrelevant, it would be impracticable to keep the fact of seduction from the jury without excluding other evidence to which the plaintiff would be entitled; and, when once admitted, the jury would probably regard it in estimating damages, and the courts would seldom disturb the verdict on that

ground: 2 Parsons on Contracts, 70. No authorities are cited by Mr. Parsons in support of his view, and we believe none can be found in the adjudged cases. On the contrary, where the question has arisen in states giving the woman a right to maintain an action for her own seduction, it has uniformly been held that the rule of the common law is unchanged by the statute, and that seduction may be alleged and proved in an action for breach of promise of marriage. Thus, in Michigan the statute authorizes an action for seduction to be brought by any relative who may be selected by the woman of full age, and in *Sheahan* v. *Barry*, 27 Mich. 219, Mr. Justice CAMPBELL, answering a contention similar to the one made in this case, and assuming that the damages recovered in an action brought under the statute belong to the woman, says: "There are two considerations in the way of holding the rule changed by our statute. If it gives a remedy to the woman herself, it should, on common-law principles, be regarded as a cumulative remedy,—so far as the seduction under promise of marriage is concerned, —rather than as superseding the old one. And it is better for all parties, and more consonant with public policy, that where justice can be fully accomplished in one suit, no one should be driven to begin more than one. And where this rule is respected there can be no danger of injustice by a second prosecution. The maxim that no one shall be twice vexed for the same cause of action will always prevent any plaintiff from suing twice for the same damages. If they can be recovered in this action under the pleadings, a recovery in this will necessarily be a bar to any future action. This subject was recently considered in the case of *Leonard* v. *Pope*, 27 Mich. 145.

So, also, in *Haymond* v. *Saucer*, 84 Ind. 3, it was held, under a statute like ours, that seduction could be con-

sidered as an element of damages in an action for a breach of promise, Mr. Justice Woods saying (page 11): "The fact that seduction accomplished under some circumstances is a crime is no reason why it may not be the subject of a civil action; and if, instead of making a separate cause of action, the injured party chooses to plead it as a cause for aggravation of damages in a suit for a breach of the promise of marriage under which it was accomplished, there is no good reason why it may not be done." Several other states contain similar statutory provisions, but we have not been able to find a single case in which it has been held that evidence of seduction in an action for breach of promise of marriage is not admissible on that ground. The rule allowing seduction to be alleged and proven in such an action is but a rule of damages based upon the theory that a plaintiff is entitled to compensation for mental suffering, injury to reputation, loss of virtue, and the shame and disgrace caused by defendant's conduct, and ought not to be varied because of the possibility of another action. And from the Michigan and Indiana cases it would seem that if a plaintiff chooses to allege and prove seduction in an action for breach of promise in aggravation of damages, the judgment in such action would be a bar to a further action by the woman under the statute for her own seduction.

It is also claimed that there is no evidence in this case tending to show seduction. The plaintiff testified that the defendant had illicit intercourse with her on or about April tenth, eighteen hundred and ninety-two, and, from her statement of the circumstances under which it occurred, we think the jury would have been justified in inferring that she was not an unwilling participant, although she says it was accomplished by force and without her consent. This was a question for the

jury and there was evidence sufficient to justify its submission to them.

2.   It is also claimed that the court erred in instructing the jury that if they found from the evidence that the promise of marriage was made, and justification for breaking off the promise had not been proven, and that there was seduction, then they "must" consider the seduction in assessing the damages.   In actions of this character the question of damages belongs exclusively to the jury, subject, of course, to the power of the court to set aside the verdict if against the evidence, or when excessive damages are allowed.   There are no hard or fast rules by which the amount can be determined; each case must be dealt with according to its own particular circumstances.   While seduction under a promise of marriage may be alleged and proven in aggravation of damages, yet it is for the jury alone to determine what weight, if any, is to be given to such testimony, and what effect it will have in determining the amount of damages to which plaintiff is entitled.   That portion of the instruction complained of, deprived the jury, in case they found the facts referred to, of all discretion upon the question as to whether they should consider the seduction in assessing damages.   They were told that in that event they "must" so consider it.   Such we do not understand to be the law.   In an ordinary action for a breach of contract, the amount recovered is limited to the actual damages caused by the breach.   To this rule there is an exception in an action for breach of promise of marriage, because, although founded on contract, it is regarded as being somewhat in the nature of an action founded upon tort; but the cases sustaining the exception go no further than to hold that it should be left to the good judgment and discretion of the jury whether or not there should be added to the damages naturally

resulting from a breach of the contract anything on account of seduction accomplished under the promise. In the case of *Jacobs* v. *Sire*, 23 N. Y. Superior Ct. 1063, in an action for breach of promise of marriage, the court instructed the jury that if they believed from the testimony the defendant had purposely and maliciously wronged the plaintiff, they were bound to give what are called exemplary damages, but the court held this instruction error upon the ground that it deprived the jury of all discretion upon the question whether exemplary damages should or should not be given. The court said: "Sedgwick and other text writers on damages agree upon the proposition that where there is evidence of circumstances sufficient to uphold a verdict for exemplary damages, the question whether they shall be given or not is one for the jury, and it is erroneous to instruct the jury to give exemplary damages, for the plaintiff can never recover them as a matter of law." So, in this case, we think it was error for the court to instruct the jury that if they found a promise was made, and there was no justification for the breach, and that seduction occurred, they "must" consider the seduction as an element in estimating the damages; and under the evidence we cannot say it was harmless error. From plaintiff's own testimony it appears that she was not inexperienced in the ways of the world, but was of mature years, had been married, and became engaged to the defendant, who is an old man, within two weeks after her first acquaintance with him; that she left the home of her aunt and uncle, where she was living, and went to defendant's rooms, where she claims to have been seduced, and lived with him as his "promised wife" for some time before the alleged seduction took place, and continued to live with him afterwards without complaint; and that the alleged seduction was not disclosed to any person or

known by any one except the parties until the plaintiff consulted counsel for the purpose of bringing this action. Under these circumstances it was prejudicial error to tell the jury that if they found the seduction they must consider it in estimating the damages. It should have been left to the sound judgment and discretion of the jury, under all the circumstances of the case, with the direction that they should exercise their own judgment, and consider the seduction or not as to them might seem just and proper.

3. The next alleged error is in permitting Emma Dodge, Walter Dodge, and Danville Dodge, the aunt and uncles of the plaintiff, to testify in her behalf, against the objection of defendant, that she told them,— the defendant not being present,— on the day she claims the promise to have been made, that she was engaged to marry the defendant. This, we think, was incompetent, and should not have been admitted. There is a class of authorities holding that when the offer of marriage by the defendant is shown, and the question of the acceptance of the offer by the plaintiff becomes material, it is competent to show such acceptance by her actions and conduct not in the presence of the defendant: *Hutton* v. *Mantell,* 6 Mod. 172; *Peppinger* v. *Low,* 6 N. J. L. 384; *Moritz* v. *Melhorn,* 13 Pa. St. 331; *Thurston* v. *Cavenor,* 8 Iowa, 155. These cases recognize that the admission of such evidence is an exception to the general rule of law, based upon the peculiar nature of the contract, which is generally made in secret, and to which witnesses are not called to attest, and had its origin in the supposed necessities of the case. The foundation for this doctrine rests upon the decision of *Hutton* v. *Mantell,* 6 Mod. 172, in which there was no question as to defendant's offer, and which was rendered while the parties to an action were yet ineligible as witnesses, and was probably based upon

the fact that such evidence was, in the language of some of the latter cases, "frequently the only, and ordinarily the best and most satisfactory, evidence of the existence of the engagement." But the reason for this rule has ceased, and, under our system, which permits all parties to testify in their own behalf, it is not apparent why any different rule of evidence should now prevail in this class of cases than that which prevails in other cases. But if it be true that cases may arise — where the offer of marriage on the part of the defendant is shown, but the acceptance by the plaintiff is disputed — in which her conduct and declarations may be competent to show her assent, no such question is presented by this record. Here there was no question as to the assent of the plaintiff if an offer was made by the defendant, but the important question made by the pleadings, and vigorously contested throughout the entire trial, was the alleged promise on the part of the defendant, and concerning this the plaintiff was permitted to fully and freely testify in her own behalf, and there was no reason for allowing her to use her bare declarations, made without the knowledge or consent of the defendant, to support her case. Every reason which exists for the exclusion of such evidence in other cases forbids with equal force its use in a case of this nature.

As was said by MORSE, J., in *McPherson* v. *Ryan*, 59 Mich. 39, 26 N. W. Rep. 321: "The plaintiff, as courts and juries must ever be constituted, has certainly advantage enough of the defendant, without giving her the opportunity of fabricating, by her acts and declarations, without his consent or knowledge, evidence to make a case against him. It would place almost any man at the mercy of an evil disposed and designing woman. An adventuress could come into court and swear to a promise

of marriage, and then bring others of like ilk, her friends and intimates, to sustain her with testimony of the stories she had told them in furtherance of her plan to secure damages.  There is no necessity of throwing open the doors of courts to such opportunities to work injustice.  When the plaintiff has the equal right with the defendant to place fully before the jury the story of her wrongs, aided, as she will ever be, by the sympathy always recorded to both the weakness and the beauty of her sex,—a sympathy which the most rigid administration of justice cannot entirely prevent,—right and equity demand that she shall no longer have the aid which the law refuses in all other cases."  There is another class of cases which holds that when a promise of marriage by the defendant is shown, in pursuance of which plaintiff has made preparation for the marriage, her declarations and statements accompanying and in explanation of such preparations are competent as evidence to show her acceptance of the promise and in aggravation of damages: *Westmore* v. *Mell*, 1 Ohio St. 26, 59 Am. Dec. 667; *Reed* v. *Clark*, 47 Cal. 194; *Dunlap* v. *Clark*, 25 Ill. Ap. 573.  But these cases are not applicable to the question presented by this record, because the declarations of the plaintiff admitted were simply her bare, bald statements, that she was engaged to the defendant, and it would be an unwarranted relaxation of the rules of evidence to sustain the admission of such testimony.  The tendency of the modern decisions is to apply the same rule of evidence in cases of this nature as in other cases, and it has even been held that evidence of preparations for the marriage are inadmissible:  1 Rice on Evidence, 862; *Russell* v. *Cowless*, 15 Gray, 582, 77 Am. Dec. 391; *Walmsley* v. *Robinson*, 63 Ill. 41, 14 Am. Rep. 111; *Graham* v. *Martin*, 64 Ind. 567; opinion of MORSE, J., in *McPherson* v. *Ryan*, 59 Mich. 33, 26 N. W. Rep. 321; *Lawrence* v. *Cooke*, 56 Me. 187, 96 Am. Dec. 443.

4. As the other questions suggested in the brief will probably not arise on another trial, it is unnecessary to notice them at this time, except to say that we think the evidence of the manner in which plaintiff and defendant were received and treated in the lodge was competent as tending to show the manner in which they were received and treated by their neighbors and friends, and their conduct toward each other: *Kelly* v. *Highfield*, 15 Or. 277, 14 Pac. Rep. 744.

5. The evidence tending to show plaintiff's reputation for truth and veracity to be good was not competent unless such reputation had previously been attacked: *Sheppard* v. *Yocum* and *DeLashmutt*, 10 Or. 402; Thompson on Trials, § 555. The judgment is reversed and a new trial ordered.            Reversed.