## LEIBBRANDT v. SORG.

### S. F. No. 2241; May 29, 1901.

#### 65 Pac. 318.

Breach of Marriage Promise—Evidence.—Code of Civil Procedure, section 1845, provides that a witness can testify to those facts only which he knows of his own knowledge. Held, that, in an action for breach of marriage promise, the admission of plaintiff's declarations to third parties, who were not invited to attend the wedding, and before any wedding day had been set, that plaintiff and defendant intended to marry, constituted prejudicial error.

Breach of Marriage Promise.—The Fact That There was Competent Evidence to prove a contract of marriage in an action for breach of promise did not render the admission of declarations of plaintiff to third· parties that plaintiff and defendant intended to marry harmless, where the court stated in the presence of the jury that such evidence was competent.

Breach of Marriage Promise—Damages.—Where, in an Action for Breach of promise, the court charged that, if plaintiff and defendant entered into an agreement to marry, plaintiff was entitled to damages if defendant wrongfully violated the agreement, a further charge that the shock and injury to plaintiff's affections occasioned by defendant "having violated his promise" was a proper element of damages was not misleading.

APPEAL from Superior Court, Santa Clara County; W. G. Lorigan, Judge.

Action by Bertha Leibbrandt against Jean Sorg. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Jackson Hatch and E. M. Rosenthal for appellant; Sargent & Wyatt for respondent.

COOPER, C.—Plaintiff recovered judgment for $4,500 damages for breach of promise of marriage. Defendant made a motion for a new trial, which was denied, and this appeal is from the judgment and order.

Plaintiff testified fully as to all the facts and circumstances connected with the alleged contract of marriage. Her counsel then asked her this question: "Did you ever tell anybody about your contemplated marriage with Sorg?" Defendant objected to the question as immaterial, incompetent and ir-

relevant, and the objection was overruled. The judge at the time of the ruling remarked that the question would be allowed, not for the purpose of proving a promise of marriage, but to show humiliation on the part of plaintiff. The witness then answered that she said to Mrs. Barkley: "Mrs. Barkley, I am going to tell you the truth. I am going to get married, and I am going to marry a rich man, and will not have to work so hard any more." The witness further said that she thought she told Mrs. Barkley that the man's name was Sorg. The plaintiff's attorney afterward called Mrs. Barkley, who testified that she had a conversation with plaintiff in Santa Cruz about the last of August, 1898, in which plaintiff spoke about getting married. Then this question was asked: "Just relate what was said at that time." To this question the defendant objected upon the ground that it was incompetent, and that declarations made by plaintiff are inadmissible to show a contract of marriage on the part of defendant. The court overruled the objection, to which ruling defendant excepted, and the witness said: "No, I cannot tell." The plaintiff's counsel then asked the following question: "Did Mrs. Liebbrandt at that time say to you that she was to marry Mr. Sorg?" This question was again objected to, the objection overruled, and the witness answered: "Yes, sir." The court did not limit the evidence of Mrs. Barkley in any manner. On the contrary, the objection went directly to the point that the declarations of plaintiff are incompetent to show a contract of marriage on the part of the defendant. The testimony was hearsay and incompetent, and the ruling of the court clearly erroneous. It is provided in the Code of Civil Procedure (section 1845): "A witness can testify of those facts only which he knows of his own knowledge; that is which are derived from his own perceptions, except in those few cases in which his opinions or inferences or the declarations of others are admissible." This is not one of those few cases. We might search the text-books and decisions in vain for the purpose of finding any authority for the admission of the declarations of a party to a contract made to third parties in his own favor and in his own interest for the purpose of proving such contract. It is said in 2 Rice on Evidence, page 863, in speaking of evidence as to breach of promise: "The conduct of the defendant may be evidence of a promise by him in favor of a plaintiff, because

the conduct or declarations of a party are, upon general principles, competent evidence against him; but the conduct or declarations of a party are not generally evidence in his favor. And there seems to be nothing in the nature of a contract of marriage which should distinguish it from other contracts in this respect. . . . . The acts of the plaintiff, until they are communicated to the defendant, are not binding upon the plaintiff as constituting a contract. Why should they be evidence for the plaintiff of any part of a contract to bind the defendant?" It was said by the supreme court of Michigan in discussing this kind of evidence in McPherson v. Ryan, 59 Mich. 39, 26 N. W. 321: "And every reason that applies to the exclusion of this kind of testimony in other cases forbids its further use in actions of this nature. The plaintiff, as court and juries must ever be constituted, has certainly advantage enough of the defendant, without giving her the opportunity of fabricating by her acts and declarations, without his consent or knowledge, evidence to make a case against him. It would place almost any man at the mercy of an evil-disposed and designing woman. An adventuress could come into court, and swear to a promise of marriage, and then bring others of like ilk, her friends and intimates, to sustain her with testimony of the stories she had told them in furtherance of her plan to secure damages. Where the plaintiff has the equal right with the defendant to place fully before the jury the story of her wrongs, aided, as she will ever be, by the sympathy always accorded to both the weakness and the beauty of her sex—a sympathy which the most rigid administration of justice cannot entirely prevent—right and equity demand that she shall no longer have the aid which the law refuses in all other cases." The question of the admissibility of such evidence has been very fully discussed by the supreme court of Oregon in Osmun v. Winters, 25 Or. 260, 35 Pac. 250, and in the opinion it is said: "And there was no reason for allowing her to use her bare declarations, made without the knowledge or consent of the defendant, to support her case. Every reason which exists for the exclusion of such evidence in other cases forbids with equal force its use in a case of this nature." In Russell v. Cowles, 81 Mass. 582, it was held that such evidence was not admissible, and in the opinion this language is used: "And there seems to be nothing in the nature of the contract of

marriage which should distinguish it from other contracts in this respect:'' To the same effect are Cates v. McKinney, 48 Ind. 563, 17 Am. Rep. 768; Graham v. Martin, 64 Ind. 567; Walmsley v. Robinson, 63 Ill. 41; Dunlap v. Clark, 25 Ill. App. 575; 2 Pars. Cont., 8th ed., 62.

Our attention is called to the case of Reed v. Clark, 47 Cal. 199, in which it was held that, for the purpose of enhancing damages, the plaintiff was properly allowed to prove that within a few days after the proposal and acceptance the plaintiff announced her engagement to a few ladies with whom she was intimate, and whom she invited to attend the wedding. No authority is cited in the opinion, and the evidence was evidently held admissible upon the theory, as announced in some cases, that plaintiff, by way of damages, may prove that she made ''preparations for the wedding.'' We are not inclined to extend the authority of that case beyond the facts therein appearing. The trend of modern decisions is that evidence of preparations for the wedding by plaintiff without the knowledge of defendant is not admissible: Osmun v. Winters, supra, and cases cited. The facts of this case do not come within the rule in Reed v. Clark. The witness Mrs. Barkley was not invited to the wedding. No wedding day was set or even talked of. She was permitted to testify to the bald declaration, in answer to a leading question, that the plaintiff told her she was to marry the defendant. The plaintiff was permitted to testify that she told Mrs. Barkley that she was going to marry defendant. Mrs. Barkley had not been invited to any wedding, and the conversation was not in the course of preparations for the wedding. We cannot say how much effect this improper testimony had upon the minds of the jurors. It will not be presumed that the jury disregarded it. In fact, the presumption is that the jurors relied upon it, in view of the fact that the judge, in their presence and hearing, held it to be competent. The fact that there was other competent evidence tending to prove the contract of marriage does not show that error was not prejudicial: Silveira v. Iversen, 128 Cal. 188, 60 Pac. 687. As the record contains the improper testimony, as herein stated, it becomes unnecessary to discuss the question as to the sufficiency of the evidence to justify the verdict.

The court did not err in giving the instruction numbered 12 to the jury. The shock and injury to plaintiff's affections

therein spoken of as an element of damages by "defendant having violated his promise to marry" could not have misled the jury. The sentence had reference to the preceding part of the instruction, to the effect that if the jury should find from the evidence "that plaintiff and defendant entered into an agreement to marry, one or the other, and that said defendant wrongfully broke and violated said agreement, and the plaintiff is entitled to damages therefor," then in assessing such damages the rule is given. The judgment and order should be reversed.

We concur: Gray, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed.

HENSHAW, J.—I concur in the foregoing opinion and judgment. Such evidence is never admissible to prove the contract to marry. But, after competent proof of the contract, I think the evidence clearly admissible for the limited purpose of showing damage by reason of the humiliation following the breach of contract. A woman whose engagement is known only to herself and recreant lover will not, it may be assumed, suffer for his faithlessness quite so many and so keen pangs as the woman who has made announcement of her engagement to her circle of friends. Therefore, I think the ruling in Reed v. Clark is correct on principle, without supporting authority.