CHARLES BLUMENO v. THE GRAND RAPIDS & INDIANA
RAILROAD COMPANY.

*Carriers—Ejection of passenger—Instructions—Damages.*

1. Where the circuit judge, in charging the jury, incorrectly states the theory of the plaintiff, and, on his attention being called to the matter, corrects the erroneous statement, and makes it conform substantially to the plaintiff's claim, the plaintiff is not injured by the statement complained of.

2. The rule laid down in *Sheahan v. Barry,* 27 Mich. 217, 227,— that the use by the circuit judge, in his charge, of language which may lead the jury to infer that the court has little confidence in the testimony of the plaintiff, is not error if they are fully informed and understand that they are not bound to follow the views of the court, but have the right and are in duty bound to decide for themselves,—is not to be extended to cases where the instruction implies a duty on the part of the jury to yield their judgment to that of the circuit judge.

3. It is reversible error for the circuit judge, in a personal injury case, to instruct the jury practically that the plaintiff has not sustained serious injury, his testimony to the contrary notwithstanding.

   So held where the circuit judge stated to the jury that the plaintiff claimed that he was seriously injured, and incapacitated for work, and that he was a well man before receiving the injury, and never had to take medicine; that, as against this claim, was the testimony of two witnesses who testified that the plaintiff took treatment in their presence time after time, and complained of being ill, and stated that he intended to quit the business in which he was engaged because of poor health; that the latter evidence tended to show that plaintiff's testimony was not true; and, further, that the case was not a very serious one, and would not justify very large damages, and that a verdict for any very substantial amount would not stand at the hands of the court.

Error to Osceola.    (Judkins, J.)    Submitted on briefs
June 8, 1894.  Decided June 26, 1894.

Negligence case.    Plaintiff brings error.    Reversed.    The facts are stated in the opinion.

*Charles A. Withey,* for appellant.

*T. J. O'Brien* and *J. H. Campbell,* for defendant.

HOOKER, J.    The plaintiff appeals from a verdict and judgment in his favor for the sum of $30.    The action was brought to recover damages for injuries alleged to have been sustained by the plaintiff upon occasion of his having been denied admission to defendant's train, and his ejection therefrom by defendant's brakeman.

The plaintiff testified that, when he came to the rear end of the train, there were two or three men behind him, and the brakeman told him that he "should let by those men," and, after they got on the car, he said, "You can't get in here on this car;" that he could not ride in that car, but must go into the smoking car; that plaintiff expostulated with him, but he would not let him get upon the car; that the conductor shouted, "All aboard," and the train began to move, and the brakeman commenced to jerk, and jerked him from the train, and tore his clothes in three or four places.    He testified further that he was a peddler, and that he was so injured that he has never since been able to carry a pack, or do any manual labor.    He did not make a further attempt to board defendant's train on the occasion mentioned, but remained in Reed City.

The court said to the jury that certain facts were admitted, mentioning them, and then proceeded to state the theories of the respective parties.    In mentioning that of the plaintiff, the judge said:

"It is also a fact that he did not go, and was not allowed to enter the car at the rear end, and entered nowhere

else at all, but was left there in town, and he brings an action here, and seeks to recover damages on the theory that he had a right to enter the car at the rear end, and was unlawfully and forcibly evicted and shoved off the car by the defendant's brakeman."

Counsel for plaintiff says in his brief:

"The court put the plaintiff's case to the jury 'on the theory that he had a right to enter the car at the rear end, and was unlawfully and forcibly evicted and shoved off the rear car by the defendant's brakeman.' This was not the theory of the plaintiff's case at all, and the court's attention was called to the fact then and there that it was not his theory, but he failed to correct what he had said. Plaintiff's theory was, as made by his declaration and as proved, that he was forbidden to enter that car, and was told that if he rode on that train he must go into the smoking car."

The subject was called to the court's attention at the time of the charge, and he modified the passage quoted as follows:

"The plaintiff's theory is that he went to the rear end of the passenger car, the last car of the train, and offered to get in the back door or rear door; that he was confronted by the defendant's brakeman, Mr. Heath, and was not allowed to go in, but was told that he should go into the smoking car; that he sought to go into the car, but was pushed off in a violent and rough manner, and injured more or less."

In the light of this, we think the plaintiff was not injured by the statement complained of, which was at at once corrected, and made to conform substantially to the claim of counsel.

This practically covers the fourth assignment of error, where complaint is made that the plaintiff's theory was not presented to the jury at all, and it is said that this branch of the charge ignored plaintiff's theory. Inasmuch as it was a discussion of the defendant's theory, it is not surprising that the court, for the time being, should have

· "ignored the plaintiff's theory." Plaintiff's theory had already been stated to the jury, and was again, in the paragraph following, in which it was quite fully explained and discussed.

The charge is said to be erroneous because it left the jury to believe that, if the company had a regulation requiring the closing of the rear door, it had a right to enforce it as against the plaintiff, regardless of whether it was enforced against others; that the evidence showed that others were permitted to enter at the very time that plaintiff was excluded, which situation was wholly ignored by the charge. The jury returned for instruction, and the following colloquy ensued:

" *The Court:* I understand, gentlemen, you desire some further instructions.

" *A Juror:* The matter stands in this shape: We are 11 to 1. There is one of us - that seems to desire some further instruction on the evidence, or the evidence itself. He can state it himself.

" *The Court:* What is the point?

" *A Juror:* The point was whether this man had a right to guard that end of the train. If it was a rule that they had that he should lock that door, and he didn't lock it, whether he had a right, when he found it unlocked, to stand and guard it. I claim he had.

"*The Court:* I think I covered that in my instructions. I say, if it was the regulation to close that door, and allow no one in that door at Reed City, that they had a right to require passengers to go to the front door, if that was the general regulation, and so understood and acted upon.

"*A Juror:* Wasn't it the evidence in the case that it was?

"*The Court:* There is evidence on both sides of the question, I suppose.

"*Mr. Campbell:* There is no dispute that it was the general regulation of the road.

"*Mr. Withey:* I think your honor should instruct the jury that they have no right to enforce it as against one man and ignore it as to another.

"*The Court:* It should be a general regulation. They

had the right to make a general regulation and enforce it, and they had the right, if it was a general regulation, to enforce it against this man, too.

"*A Juror:* Is there anything in the testimony to the effect that it was a regulation of the road? I didn't hear any.

"*The Court:* That was admitted in the case. It was admitted by counsel on both sides.

"*Mr. Withey:* I ask the court to instruct the jury that they had no right, even though there was such a general regulation, to enforce it against the plaintiff while at the same time and occasion they did not enforce it against others.

"*The Court:* I shall hold so, if that was the case. It should be a general regulation, applying to all alike. I think it is claimed that parties went in that same day at that same door. The brakeman claims not, so it becomes a question of fact whether it was a general regulation, and whether it was applied to all parties alike at that time or not."

Error is assigned upon the last paragraph. The court instructed the jury upon this point as contended for by the plaintiff.

The circuit judge said to the jury further:

"Now, it is for you to say, gentlemen, whether, under the circumstances of this case, the damages amount to very much or not; whether the mere fact that the man was shoved off of the platform, as claimed by himself, and backed onto his feet to the platform below, would necessarily have been very serious, and whether or not, as a matter of fact, it has not been magnified to a large degree. These are questions which appeal to your common sense as experienced men in the ordinary affairs of life. You certainly have no right and no desire to allow this man anything beyond what is fair and just, or to compel this company to pay anything more than is fair and just. He would be entitled to recover at your hands whatever would be fair, just, and proper under the circumstances as they existed at the time. He claims he was injured seriously; that he could not work after that; that he lost his job, and has been unable to earn as much as theretofore; that he never was sick before; never took medicine before; that he was a well man, and that after that he was not well.

That is his claim upon that head, while, as against that, you have the testimony of the two ladies who came upon the stand and swore that he took treatment in their presence time after time, complained of being ill, and made the statement to them that he intended to quit the business of carrying his pack for the reason that his health was poor; that he had a pain in the back; was feverish, etc. That evidence tends to show that his testimony is not true when he says in your presence that he never was sick before and never took medicine; it is a direct contradiction of his testimony, and should be considered by you, gentlemen, for what it is worth in this case, as bearing upon the credibility of this witness and the general scope of his claim and the general nature of his claim.

"Now, that is all that I care to say to you about this case. It is not a very serious case, and I say on this record it will not justify very large damages under any view of it in its strongest light, and a verdict here in any very substantial amount will not stand at the hands of this court, because, on the whole case in its strongest light, it will not justify it, and I don't think counsel for the plaintiff think so. You are men of intelligence, men of common sense, and I trust you can see right through this case from first to last in all its bearings and ramifications, and will stand out boldly and do justice between both these parties. That is what law is for. It should not be misused or abused. It should not be made the machinery for oppression, robbery, and fraud; it should be the machinery for the administration of justice between the parties.   *   *   *   Do what you think is right, gentlemen of the jury, using your keen common sense, your shrewdness, and your sense of justice."

That the language complained of might lead the jury to infer that the court had little confidence in the testimony of the plaintiff is apparent. But this was not error if the jury were fully informed and understood that they were not bound to follow such opinion, and had the right and duty to decide for themselves. This is the rule laid down in the case of *Sheahan v. Barry*, 27 Mich. 217, 227, where the late Mr. Justice CAMPBELL cites and discusses the authorities. See, also, *Elliott v. Van Buren*, 33 Mich. 49, 58. But this Court has in many cases indicated that

this rule is not to be extended to cases where the instruction implies a duty on the part of the jury to yield their judgment to that of the judge. In our opinion this charge went further, and practically instructed the jury that the plaintiff had not sustained serious injury, his testimony to the contrary notwithstanding, especially in view of the fact that he informed the jury that a verdict for a "substantial" amount would not be allowed to stand.

It is not impossible that the circuit judge placed a proper estimate upon the value of the testimony and the character of the case, and we have no reason to doubt his motives in giving these instructions. They are, however, made the basis of caustic strictures upon the trial judge, strictures which ought not to have been tolerated by him, if brought to his notice by being embraced in exceptions to the charge, and which should not pass unnoticed here. Counsel could as well have made his points without charging misconduct on the part of the judge, which he does by saying that—

"It is impossible to read this charge without being impressed with the idea that the trial judge made a much stronger defense for the railroad than its regular counsel, and that said judge was '*gunning for game*' *on his own account.*"

In this conection we quote another unseemly comment upon the trial court. Speaking of the charge, it is said:

"It bears upon its own face its utter dishonesty. I make no pretense of respect for the charge or the judge that delivered it. It means nothing else than that the trial court deliberately and purposely, with preconceived intention, defeated the plaintiff, so far as in him lay. It cannot be excused as inadvertent, or even as carelessness. It is simply malicious,—a wanton prostitution of the most sacred element of his office."

Such attacks in court records upon honorable members of the profession are without the pale of professional

ethics, and, as such, we feel that we owe it to the judiciary and the profession to set the seal of our disapproval upon them.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.